**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JEFFREY MERCADO, TYRONE PRINGLE, ADAM ROMAN, KEVIN KNOIS, and EDWARD KALANZ, on behalf of themselves and others similarly situated,<br><br>                Plaintiffs,<br><br>     v.<br><br>METROPOLITAN TRANSPORTATION AUTHORITY and TRIBOROUGH BRIDGE AND TUNNEL AUTHORITY,<br><br>            Defendants. | Civil Case No.: 1:20-cv-06533<br><br>**COLLECTIVE ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Jeffrey Mercado, Tyrone Pringle, Adam Roman, Kevin Knois, and Edward Kalanz (collectively, "Plaintiffs"), on behalf of themselves and others similarly situated, by and through their attorneys, hereby allege the following against Defendants Metropolitan Transportation Authority ("MTA") and Triborough Bridge and Tunnel Authority ("TBTA") (collectively, "Defendants"):

## <u>NATURE OF THE CLAIMS</u>

1.    Plaintiffs, on behalf of themselves and all current and former similarly situated Bridge and Tunnel Officers ("Officers") employed by Defendants, bring this action against Defendants pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA") to recover unpaid overtime compensation and liquidated damages for delayed payments of overtime and other wages.

2.    Defendants engage in a willful policy and practice of requiring Officers to regularly perform pre- and post-shift work without compensation, thereby intentionally depriving Officers of overtime compensation for hours worked in excess of 86 hours per 14-day work period.

3.     Moreover, Defendants employ a systemic time-shaving policy that automatically rounds Officers' clock-in times up to their scheduled tour start-times, and automatically rounds clock-out times down to their scheduled tour end-times, even though Officers are required to perform work before and after their scheduled tours.

4.     Defendants also engage in a payroll practice of intentionally miscalculating the Officers' overtime rates by refusing to include certain compensation, differentials, and bonuses in the Officers' regular rate of pay when calculating overtime, in violation of the FLSA and supporting regulations.

5.     Finally, until approximately one month ago, Defendants engaged in an unlawful policy and practice of delaying the payment of overtime compensation and other wages owed to the Officers beyond the regular payday, without having any reasonable justification for doing so.

6.     Defendants' organization-wide policies and practices affect all Officers and the resulting violations of the FLSA are continuous and ongoing.

7.     Plaintiffs' claims under the FLSA are brought as a collective action, pursuant to 29 U.S.C. § 216(b), on behalf of themselves and all other Officers who performed work for Defendants at any time during the full statute of limitations period.

<u>**JURISDICTION AND VENUE**</u>

8.     Pursuant to 28 U.S.C. §§ 1331, 1337, and 1343, this Court has subject matter jurisdiction over this action because it involves federal questions regarding the deprivation of Plaintiffs' rights under the FLSA.

9.     This Court also has subject matter jurisdiction over Plaintiffs' claims under the FLSA, pursuant to 29 U.S.C. § 216(b).

10. Pursuant to 28 U.S.C. § 1391(b)(2), venue is proper in this district because a substantial part of the events or omissions giving rise to this action occurred in this district.

11. This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

## PARTIES

### A. Plaintiffs

12. Plaintiff Jeffrey Mercado is a resident of the State of New York and has been employed by Defendants as an Officer from August 2003 through the present. At all relevant times, Mr. Mercado was an "employee" of Defendants within the meaning of the FLSA.

13. Plaintiff Tyrone Pringle is a resident of the State of New York and has been employed by Defendants as an Officer from June 2002 through the present. At all relevant times, Mr. Pringle was an "employee" of Defendants within the meaning of the FLSA.

14. Plaintiff Adam Roman is a resident of the State of New York and was employed by Defendants as an Officer from January 2004 through the present. At all relevant times, Mr. Roman was an "employee" of Defendants within the meaning of the FLSA.

15. Plaintiff Kevin Knois is a resident of the State of New York and has been employed by Defendants as an Officer from April 2004 through the present. At all relevant times, Mr. Knois was an "employee" of Defendants within the meaning of the FLSA.

16. Plaintiff Edward Kalanz is a resident of the State of New York and has been employed by Defendants as an Officer from March 2002 through the present. At all relevant times, Mr. Kalanz was an "employee" of Defendants within the meaning of the FLSA.

### B. Defendant MTA

17. Defendant MTA is a public benefit corporation responsible for public

3

transportation in New York and Connecticut, with its principal place of business located at 2 Broadway, New York, New York 10004.

18.     At all relevant times, Defendant MTA was an "employer" of Plaintiffs within the meaning of the FLSA.

19.     Upon information and belief, MTA negotiates the wages of the Officers with the Bridge and Tunnel Officers Benevolent Association ("BTO") Union, and controls the payroll, timekeeping, and compensation practices at issue in this case.

20.     Payroll and compensation benefits for the Officers are processed by the MTA's Business Services Center.

21.     MTA issues paychecks and payroll information to all Officers following each pay period.

22.     Upon information and belief, MTA exercises control over how the Officers' overtime rates are calculated and paid.

23.     Upon information and belief, MTA maintains the Officers' employment records and all other documents relating to Human Resources, benefits, and payroll in its Business Services Center.

24.     Officers are issued employee ID's and vehicle tags identifying them as MTA employees.

25.     Officers are provided access to an online electrical portal ("MTA Portal") by visiting www.mymta.com.  Once logged into the MTA Portal, Officers have access to all of their payroll information, including electronic paystubs, gross wages earned, deductions, and information relating to their benefits.

**C.**     **Defendant TBTA**

26.     Defendant TBTA is a transportation and toll collection agency which operates seven intrastate toll bridges and two tunnels in New York City.  Defendant TBTA is an affiliate agency of MTA, with its principal place of business at the Robert Moses Building Randall's Island, New York, NY 10035.

27.     At all relevant times, Defendant TBTA was an "employer" of Plaintiffs within the meaning of the FLSA.

28.     Upon information and belief, TBTA handles employee relations issues of the Officers on behalf of the MTA.

29.     Upon information and belief, TBTA handles Officer complaints relating to payroll, timekeeping, and compensation practices at issue in this case.

30.     Upon information and belief, TBTA exercises control over how the Officers' overtime rates are calculated and paid.

31.     At all relevant times, Defendants MTA and TBTA were, jointly and individually, "employers" of Plaintiffs, within the meaning of the FLSA.

32.     Defendants are associated and joint employers, act in the interest of each other with respect to employees, pay employees by the same method, and share control over employees.

## FACTS

**A.**     **Background**

33.     Plaintiffs all work for Defendants as Officers.

34.     The Officers' work week is defined as 14 consecutive days.

35.     Officers are regularly scheduled to work ten 8-hour tours, for a total of 80 hours, per 14-day work period.

36.     Officers at the various facilities (seven bridges and two tunnels) are typically scheduled to work the following tours: (i) 10:50 p.m. to 6:50 a.m. (8 hours); (ii) 6:50 a.m. to 2:50 p.m. (8 hours); and (iii) 2:50 p.m. to 10:50 p.m. (8 hours).

37.     Officers at the special operations division are typically scheduled to work the following tours: (i) 9:50 p.m. to 5:50 a.m. (8 hours); (ii) 5:50 a.m. to 1:50 p.m. (8 hours); and (iii) 1:50 p.m. to 9:50 p.m. (8 hours).

38.     Defendants typically require Officers to engage in "one-for-one relief" or "face-to-face-relief" following the completion of a tour.  This means that an outgoing Officer cannot leave until an incoming Officer arrives.

**B.     Officers Are Required To Perform Compensable Pre-Shift Work Off-The-Clock**

39.     All Officers regularly perform "pre-shift" work before their scheduled tour starts, and before they even clock-in.

40.     Officers' pre-shift work consists of, *inter alia*: (i) reviewing the roll call assignment sheet; (ii) conferring about starting assignment and potential changes or switches in positions prior to Roll Call; (iii) selecting posts and assignments for unscheduled tours – which must be done 10 minutes before Roll Call (iv) compiling patrol forms, wrecker forms, tractor forms, and other documents needed for their tours; (v) obtaining summonses; (vi) reviewing alerts and postings; (vii) retrieving firearms; (viii) signing out necessary equipment; (ix) testing the equipment to ensure functionality; and (x) checking out keys and vehicles; and (xi) completing the accompanying paperwork associated with checking out said vehicles.

41.     This pre-shift work must be completed before Roll Call.

42.     Plaintiffs and other Officers routinely start working 20 to 40 minutes before their scheduled tour start-time in order to complete all of their pre-shift work.

43.     Incoming Officers typically stand for Roll Call at the scheduled start times of their tours.

44.     Roll Call usually takes approximately 10 to 15 minutes.

45.     Incoming Officers may not releave outgoing Officers until the end of their Roll Call.

**C.     Officers Are Required To Perform Compensable Post-Shift Work Off-The-Clock**

46.     All Officers also regularly perform "post-shift" work after their scheduled tour ends, and after they clock-out.

47.     This post-shift work consists of, *inter alia*: (i) waiting to be relieved by incoming Officers who are standing for Roll Call; (ii) waiting for incoming Officers to drive to the posts; (iii) physically meeting the outgoing Officers to take over vehicles, tractors, wreckers, or other equipment; (iv) driving back or otherwise returning to the administration building or the special operations division; (v) submitting and logging patrol reports, summonses, arrest reports, activity reports, lidar logs and other documents (vi) completing paper work for returning the vehicle, including logging details such as mileage and any damage; and (vii) returning equipment.

48.     This post-shift compensable work typically takes approximately 25 to 30 minutes, and must be completed at the end of an Officer's tour.

49.     Defendants require all Officers to perform this pre-shift and post-shift off-the-clock work without compensation by: (1) implementing and requiring strict, uniform, and unlawful clock-in/clock-out restrictions; and (2) implementing and requring unlawful time rounding policies.

**a.     Clock-in/Clock-out Restictions**

50.     While all Officers typically perform extensive pre-shift and post-shift work – up until recently, Defendants had a uniform 29-minute clock-in/clock-out rule which forbade Officers

from clocking in or clocking out more than 29 minutes before or after their tours.

51.　On July 24, 2020, this 29-minute rule was uniformly revised to the following restriction:  (i) Officers may not clock in more than 22 minutes before their tour start times; and (ii) Officers may not clock out more than 16 minutes after their tour end times.  *See* Exhibit A (Overtime Authorization, Revision 1).

52.　At all relevant times, these clock-in/clock-out restrictions resulted in Officers performing pre-shift work before they were allowed to clock in, and then perfoming their post-shift work after they were forced to clock-out.

53.　If Officers violated these clock-in/clock-out restrictions, they would be subject to potential discipline, including a formal write-up.

54.　Indeed, often-times, Officers rush back to the administration building or special operations division to quickly clock out within 16 minutes of the end of their tours and then continue performing the post-shift work they they are required to complete.

55.　In fact, if an Officer is unable to return in time to comply with the clock-out restriction, they are instructed not to clock out at all.  A manual clock-out entry would subsequently be entered for them.

56.　Due to Defendants' unlawful policy of requiring Officers to perform work before they were permitted to clock-in, and peform work after they were forced to clock-out, the Officers' total hours worked are significantly deflated – resulting in an unlawful failure to pay overtime wages.

57.　Defendants have acted willfully and deliberately in maintaining an intentional practice of requiring Officers to perform compensable work off-the-clock.

**b.      Unlawful Shaving of Recorded Work Time**

58.      Defendants have an organization-wide timekeeping program called "Kronos."

59.      Kronos logs each Officer's acual clock-in and clock-out times.

60.      Kronos is also programmed with each Officers' scheduled tour times.

61.      When Kronos exports clock-in and clock-out times to Defendants' payroll system, it automatically rounds the Officers' clock-in times to their scheduled tour start-times and it automatically rounds the Officers' clock-out times to their scheduled tour end-times.

62.      Therefore, Defendants' organization-wide timekeeping and payroll policies and practices shave recorded work time and only give Officers credit for work time that is within their scheduled tour times, even though they routinely clock-in and perform work before their scheduled tour start-times and they routinely clock-out and perform work after their scheduled tour end-times.

63.      For example, if an Officer clocked in and began working at 2:21 p.m. to comply with the previous 29-minute rule, Kronos would record the 2:21 p.m. clock-in time but would automatically round that clock-in time to 2:50 p.m. (the Officer's scheduled start-time), for payroll purposes.  Defendants' timekeeping and payroll system would automatically shave 29 minutes of work time for this Officer on the clock-in.

64.      Likewise, if an Officer was required to continue working after the conclusion of his scheduled shift time, and clocked out at 11:19 p.m., Kronos would again record the 11:19 p.m. clock-out time but would automatically round that clock-out time down to 10:50 p.m. (the Officer's scheduled end-time), for payroll purposes.  Defendants' timekeeping and payroll system would automatically shave 29 minutes of work time for this Officer on the clock-out.

65.    However, if an Officer arrived one minute late and clocked in at 2:51 p.m. for a 2:50 p.m. tour, the 2:51 p.m. late clock-in time would be recorded in Kronos but the clock-in time would be automatically rounded forward in 30-minute increments to 3:20 p.m. for payroll purposes.  The Officer would continue working, but Defendants' timekeeping and payroll system would automatically shave all time worked before 3:20 p.m. – which would be 29 minutes in this example.

66.    Also, the Officer would be subject to potential discipline for arriving to work late, including a formal write-up.

67.    Indeed, Defendants' timekeeping and payroll system never rounds time in favor of the Officers, but always rounds time in favor of the Defendants.

68.    Even though Officers must comply with these various clock-in/clock-out policies and restrictions, Defendants' timekeeping and payroll system automatically cuts all of their recorded times for payroll purposes by rounding the Officers' work times to their scheduled tour times.

69.    Therefore, all work time that is performed before the scheduled tour start-time, including all pre-shift work, is always uncompensated, off-the-clock work.

70.    Likewise, all post-shift work that is performed after the scheduled tour end-time is always uncompensated, off-the-clock work.

71.    By way of example only, Mr. Mercado's time for the work period spanning from January 17, 2019 to January 30, 2019, illustrate Defendants' practice of shaving recorded work time.  According to the time records, Mr. Mercado worked 100 hours and 11 minutes but was only paid for 97 hours during this work period.  Defendants' automatic time-rounding policy and practice resulted in his total time worked being reduced by 3 hours and 11 minutes.  This does not

factor in the time Mr. Mercado spent working off-the-clock due to Defendants' clock-in/clock-out restrictions.

72.    As another example, Mr. Pringle's time records for the work period spanning from August 1, 2019 to August 14, 2019, show that he worked 211 hours and 59 minutes but was only paid for 206 hours during this work period.  Defendants' automatic time-rounding policy and practice resulted in his total time worked being reduced by 5 hours and 59 minutes.  This does not factor in the time Mr. Pringle spent working off-the-clock due to Defendants' clock-in/clock-out restrictions.

73.    For another example, Mr. Roman's time records for the work period spanning from May 9, 2019 to May 22, 2019, show that he worked 96 hours and 39 minutes but was only paid for 92 hours and 30 minutes during this work period.  Defendants' automatic time-rounding policy and practice resulted in his total time worked being reduced by 4 hours and 9 minutes.  This does not factor in the time Mr. Roman spent working off-the-clock due to Defendants' clock-in/clock-out restrictions.

74.    As another example, Mr. Knois's time records for the work period spanning from April 11, 2019 to April 24, 2019, show that he worked 117 hours and 2 minutes but was only paid for 113 hours during this work period.  Defendants' automatic time-rounding policy and practice resulted in his total time worked being reduced by 4 hours and 2 minutes.  This does not factor in the time Mr. Knois spent working off-the-clock due to Defendants' clock-in/clock-out restrictions.

75.    Similarly, for example, Mr. Kalanz's time records for the work period spanning from November 21, 2019 to December 4, 2019, show that he worked 156 hours and 56 minutes but was only paid for 153 hours and 30 minutes during this time period.  Defendants' automatic time-rounding policy and practice resulted in his total time worked being reduced by 3 hours and

26 minutes.  This does not factor in the time Mr. Kalanz spent working off-the-clock due to Defendants' clock-in/clock-out restrictions.

76.     Defendants' shaving of Plaintiffs' work hours is representative of Defendants' practices with respect to the other Officers.

77.     This shaved time is compensable working time as Defendants have a policy and practice of requiring Officers to perform pre-shift work and post-shift work, all outside the scheduled tour times.

78.     Furthermore, Defendants have acknowledged that this working time is compensable time by providing Officers with a fixed stipend – "check-in/check-out pay" – in recognition of the off-the-clock work Officers are required to perform.

79.     However, this payment is considered a Lump Sum payment (discussed further below) and does not compensate Officers for their off-the-clock pre-shift, and off-the-clock post-shift work.

80.     Defendants engage in the same timekeeping and payroll practices with respect to all Officers and, thus, all Officers are subject to this unlawful time-shaving policy.

81.     Defendants have acted willfully and deliberately in maintaining intentional practices of improperly shaving the Officers' work time and forcing them to perform off-the-clock work.

82.     Due to Defendants' unlawful time-shaving policies and practices, the Officers' total hours are deflated by approximately 5 to 10 hours per 14-day work period, resulting in an unlawful failure to pay overtime wages.

D.     **Failure To Calculate Overtime Based On The Differential Rate Of Pay**

83.     Pursuant to a collective bargaining agreement among the parties, in addition to

being paid at their respective regular hourly rates, Officers also receive other forms of compensation.

84.     First, Officers receive shift differentials for working nighttime tours or other undesirable tours (the "Shift Differentials").

85.     Second, Officers receive annual "attendance bonuses" if they maintain a perfect attendance record for the year (the "Attendance Bonuses").

86.     Third, Officers receive the following lump sum payments at various times throughout the year, irrespective of their hours worked: (i) "longevity pay," which is based solely on the number of years for which a given Officer has been employed by Defendants; (ii) "check-/check-out pay," which is a fixed stipend paid in recognition of the Officers being required to perform off-the-clock work; and (iii) a lump sum "law enforcement differential," similarly awarded to Officers irrespective of their hours worked (collectively, the "Lump Sum Payments").

87.     The Officers *do not* allege that they are not paid these Shift Differentials, Attendance Bonuses, and/or Lump Sum Payments; rather, Defendants fail to include this additional compensation in the Officers' regular rates of pay for purposes of calculating their true overtime rates under the FLSA.

88.     This practice results in an unlawful reduction in the Officers' overtime pay.

89.     The Shift Differentials and Lump Sum Payments meet the requirements to be considered non-overtime premiums, which must be included in the regular rate of pay, upon which the overtime rate is computed, pursuant to 29 C.F.R. § 778.207.

90.     Indeed, 29 C.F.R. § 778.207(b) explicitly states that "nightshift differentials" and "lump sum premiums which are paid without regard to the number of hours worked" are to be considered non-overtime premiums and must be included in the regular rate upon which the

overtime rate is based. *See also* 29 C.F.R. §§ 778.201(b)-(c) (stating that only the premiums delineated in FLSA §§ 207(e)(5)-(7) may be credited toward overtime compensation due, and that "[n]o other types of remuneration may be so credited"); 29 C.F.R. § 778.207(a) (same).

91.     The Lump Sum Payments are paid in fixed amounts irrespective of the number of hours the Officers work during a given work period.

92.     None of the Lump Sum Payments fall into the categories listed in FLSA §§ 207(e)(5)-(7).

93.     The Attendance Bonuses are properly considered "promised bonuses" which must be included in the regular rate of pay under 29 C.F.R. § 778.211(c). *See also* 29 C.F.R. § 778.208 (stating that bonuses not specifically excluded by FLSA § 207(e) "must be totaled in with other earnings to determine the regular rate on which overtime must be based").

94.     The Attendance Bonuses are not excluded under FLSA § 207(e).

95.     In fact, 29 C.F.R. § 778.211(c) expressly states that "[a]ttendance bonuses" and bonuses promised to employees as "the result of collective bargaining" are not excluded under FLSA § 207(e) and must be included in the regular rate of pay for purposes of calculating the overtime rate.

96.     Pursuant to 29 U.S.C. § 207(k) and 29 C.F.R. § 553.230, employees engaged in law enforcement activities subject to a 14-day work period are entitled to overtime compensation if they work more than 86 hours during a work period.

97.     As detailed above, Plaintiffs like all other Officers consistently work in excess of 86 hours during each 14-day work period, thus entitling them to overtime compensation under the FLSA.

98.     However, Defendants improperly exclude the Shift Differentials, Attendance

Bonuses, and Lump Sum Payments from the Officers' regular rates of pay when computing their overtime rates.

99.     As a result, the Officers' overtime compensation is unlawfully reduced.

100.     Defendants have acted willfully and deliberately in maintaining this intentional practice of improperly excluding the Shift Differentials, Attendance Bonuses, and Lump Sum Payments from the Officers' regular rates of pay when computing their overtime rates.

**E.     Failure To Pay Wages On Time**

101.     In addition to the foregoing violations, up until approximately July 1, 2020, Defendants had engaged in a policy and practice of delaying payment of overtime and wages to the Officers beyond their regularly scheduled paydays.

102.     Indeed, instead of receiving all wages for work performed within a given pay period, Officers only received compensation for their non-overtime wages on their regularly scheduled bi-weekly payday.

103.     All overtime wages were withheld and not paid until up to two pay periods – four to six weeks – after the work was performed.

104.     Under the FLSA, employers are required to pay employees on the next regularly scheduled payday following the work performed.

105.     By way of example only, attached hereto as Exhibit B are copies of two wage statements for Mr. Knois.  For the statement encompassing the work period from June 6, 2019 through June 19, 2019, a direct deposit was made into Mr. Knois's bank account on June 19, 2019. This deposit, issued in the amount of $2,664.76, includes payment both for his regular hours worked during the same work period, as well as for overtime earned – four to six weeks earlier –

during the work period from May 9, 2019 to May 22, 2019 (illustrated on the statement under the heading "HOURS AND EARNINGS --- Prior Period ---").

106.     This practice is then showed repeated in the following wage statement, dated July 3, 2019.  This statement, encompasses the work period of June 20, 2019 through July 3, 2019 and shows a direct deposit of $1,136.68 into Mr. Knois's bank account on July 3, 2019.  Again, this deposit includes payment both for his regular hours worked during the same work period, as well as for overtime earned – four to six weeks earlier – during the work period from May 23, 2019 to June 5, 2019 (illustrated on the statement under the heading "HOURS AND EARNINGS --- Prior Period ---").  *See* Exhibit B.

107.     Similarly, but again by way of example only, attached hereto as Exhibit C are copies of two wage statements issued to Mr. Kalanz.  For the statement encompassing the work period from January 17, 2019 through January 30, 2019, a direct deposit was made into Mr. Kalanz's bank account on January 30, 2019.  This deposit, issued in the amount of $4,047.16, includes payment both for his regular hours worked during the same work period, as well as for overtime earned – four to six weeks earlier – during the work period from December 20, 2018 through January 2, 2019 (illustrated on the statement under the heading "HOURS AND EARNINGS --- Prior Period ---").

108.     This practice is then showed repeated in the following wage statement, dated February 13, 2019.  This statement, encompasses the work period of January 31, 2019 through February 13, 2019 and shows a direct deposit of $3,702.27 into Mr. Kalanz's bank account on February 13, 2019.  Again, this deposit includes payment both for his regular hours worked during the same work period, as well as for overtime earned – four to six weeks earlier – during the work

period from January 3, 2019 through January 16, 2019 (illustrated on the statement under the heading "HOURS AND EARNINGS --- Prior Period ---").  *See* Exhibit C.

109.    Defendants' failure to pay Mr. Knois's and Mr. Kalanz's overtime wages on time is representative of Defendants' practices with respect to the remaining Plaintiffs and all other Officers.

110.    On or around July 1, 2020, Defendants corrected their unlawful policy of delaying the payment of overtime wages.

111.    However, throughout the relevant period up until approximately July 1, 2020, Defendants willfully and deliberate engaged in a policy and practice of violating the FLSA by failing to timely pay Officers their overtime wages.

## FLSA COLLECTIVE ACTION ALLEGATIONS

112.    Plaintiffs bring their FLSA claims as a collective action on behalf of themselves and all other similarly situated persons who have been employed by Defendants as Officers during the full statute of limitations period (the "FLSA Collective").

113.    At all relevant times, Plaintiffs and the FLSA Collective were similarly situated, had substantially similar job requirements, were paid in the same manner and under the same common policies, and were subject to Defendants' practices of: (i) unlawfully requiring them to perform off-the-clock work for which they received no compensation; (ii) shaving their work time and thereby reducing their recorded hours worked and thus their overtime compensation; (iii) failing and refusing to include Shift Differentials, Attendance Bonuses, and Lump Sum Payments in their regular rates of pay for purposes of calculating their overtime rates; and (iv) failing and refusing to pay their overtime wages on time.

114.    At all relevant times, Defendants have been fully aware of the duties performed by Plaintiffs and the FLSA Collective, and that those duties are not exempt from the overtime provisions of the FLSA.

115.    Defendants' violations of the FLSA have been willful, repeated, knowing, intentional, and without a good faith basis, and have significantly damaged Plaintiffs and the FLSA Collective.

116.    As a result of Defendants' conduct, Defendants are liable to Plaintiffs and the FLSA Collective for the full amount of their unpaid overtime wages, plus an additional equal amount as liquidated damages, plus the attorneys' fees and costs incurred by Plaintiffs and the FLSA Collective.

117.    While the exact number of the FLSA Collective is unknown to Plaintiffs at this time, upon information and belief, there are approximately 500 other similarly situated persons who were employed by Defendants as Officers during the full statute of limitations period.

118.    Plaintiffs are currently unaware of the identities of the members of the FLSA Collective.

119.    Accordingly, Defendants should be required to provide Plaintiffs with a list of all persons employed by Defendants as Officers during the full statute of limitations period, along with their last known addresses, telephone numbers, and e-mail addresses, so Plaintiffs can give the members of the FLSA Collective notice of this action and an opportunity to make an informed decision about whether to participate in it.

**FIRST CLAIM FOR RELIEF**
**VIOLATIONS OF THE FLSA: OFF-THE-CLOCK WORK**

120.    Plaintiffs, on behalf of themselves and the FLSA Collective, hereby repeat and reallege the foregoing allegations as if set forth fully herein.

121.     Plaintiffs and the FLSA Collective are employees under FLSA § 203(e).

122.     Defendants are employers under FLSA § 203(d).

123.     Defendants were not exempt from the requirement to pay Plaintiffs and the FLSA Collective one and one-half times their regular rate of pay for all hours worked in excess of 86 hours per 14-day work period.

124.     Defendants maintained a uniform policy and practice of requiring Plaintiffs and the Collective to perform compensable pre-shift and post-shift work off-the-clock.

125.     This off-the-clock work resulted in Plaintiffs and the FLSA Collective working considerably longer than 86 hours per 14-day work period.

126.     However, Defendants did not compensate Plaintiffs and the FLSA Collective for this off-the-clock work.

127.     Accordingly, Defendants failed to pay Plaintiffs and the FLSA Collective at a rate of one-and-one-half times their regular rate of pay for time spent performing the off-the-clock work.

128.     Defendants knew or should have known of their obligation to pay Plaintiffs and the FLSA Collective overtime wages for all hours worked in excess of 86 hours per 14-day work period.

129.     Defendants have acted willfully and deliberately in maintaining an intentional policy and practice of failing to compensate Plaintiffs and the FLSA Collective in accordance with the FLSA.

130.     Defendants' violations of the FLSA have significantly damaged Plaintiffs and the FLSA Collective and entitle them to recover the total amount of their unpaid wages, an additional equal amount in liquidated damages, and attorneys' fees and costs.

## SECOND CLAIM FOR RELIEF
## VIOLATIONS OF THE FLSA: SHAVING WORK TIME

131.    Plaintiffs, on behalf of themselves and the FLSA Collective, hereby repeat and reallege the foregoing allegations as if set forth fully herein.

132.    Plaintiffs and the FLSA Collective are employees under FLSA § 203(e).

133.    Defendants are employers under FLSA § 203(d).

134.    Defendants were not exempt from the requirement to pay Plaintiffs and the FLSA Collective one and one-half times their regular rate of pay for all hours worked in excess of 86 hours per 14-day work period.

135.    Defendants maintain an organization-wide timekeeping and payroll policy and practice of automatically rounding Plaintiffs' and the FLSA Collective's clock-in times to their scheduled tour start-times, even if they clocked in and began working before their scheduled tour start-times.

136.    Defendants also maintain an organization-wide timekeeping and payroll policy and practice of automatically rounding Plaintiffs' and the FLSA Collective's clock-out times to their scheduled tour end-times, even if they clocked out and continued working after their scheduled tour end-times.

137.    Additionally, if Plaintiffs or the FLSA Collective are even one minute late, Defendants timekeeping and payroll system will automatically round Officers' clock-in times, to reflect that they clocked in 30 minutes after their scheduled tour start-times.

138.    Defendants' time-shaving policy and practice applies to all Plaintiffs and the FLSA Collective.

139.    Defendants did not compensate Plaintiffs and the FLSA Collective for all work time cut as a result of Defendants' time-shaving policy and practice.

140.    Defendants' time-shaving policy and practice resulted in Plaintiffs and the FLSA Collective working considerably longer than 86 hours in a 14-day work period without compensation.

141.    Accordingly, Defendants failed to pay Plaintiffs and the FLSA Collective at a rate of one-and-one-half times their regular rate of pay for all hours worked in excess of 86 hours per 14-day work period.

142.    Defendants knew or should have known of their obligation to pay Plaintiffs and the FLSA Collective overtime wages for all hours worked in excess of 86 hours per 14-day work period.

143.    Defendants have acted willfully and deliberately in maintaining an intentional practice of failing to compensate Plaintiffs and the FLSA Collective in accordance with the FLSA.

144.    Defendants' violations of the FLSA have significantly damaged Plaintiffs and the FLSA Collective and entitle them to recover the total amount of their unpaid wages, an additional equal amount in liquidated damages, and attorneys' fees and costs.

## THIRD CLAIM FOR RELIEF
## VIOLATIONS OF THE FLSA: INCORRECT OVERTIME RATE

145.    Plaintiffs, on behalf of themselves and the FLSA Collective, hereby repeat and reallege the foregoing allegations as if set forth fully herein.

146.    Plaintiffs and the FLSA Collective are employees under FLSA § 203(e).

147.    Defendants are employers under FLSA § 203(d).

148.    Defendants were not exempt from the requirement to pay Plaintiffs and the FLSA Collective one and one-half times their regular rate of pay for all hours worked in excess of 86 hours per 14-day work period.

149.    The FLSA and its supporting regulations require that the Shift Differentials, Attendance Bonuses, and Lump Sum Payments be included in the regular rate of pay for purposes of calculating the overtime rate.

150.    Defendants maintained a uniform policy and practice of excluding Shift Differentials, Attendance Bonuses, and Lump Sum Payments from Plaintiffs' and the FLSA Collective's regular rates of pay when calculating their overtime rates.

151.    As a result of Defendants' policy and practice, Plaintiffs' and the FLSA Collective's overtime rates were reduced, causing Plaintiffs and the FLSA Collective to be denied overtime compensation.

152.    Defendants knew or should have known of their obligation to include the Shift Differentials, Attendance Bonuses, and Lump Sum Payments paid to Plaintiffs and the FLSA Collective in their regular rates of pay when calculating their overtime rates, but nevertheless failed to do so.

153.    Defendants acted willfully and deliberately in maintaining an intentional practice of failing to compensate Plaintiffs and the FLSA Collective in accordance with the FLSA.

154.    Defendants' violations of the FLSA have significantly damaged Plaintiffs and the FLSA Collective and entitle them to recover the total amount of their unpaid wages, an additional equal amount in liquidated damages, and attorneys' fees and costs.

### FOURTH CLAIM FOR RELIEF
### VIOLATIONS OF THE FLSA: FAILURE TO TIMELY PAY WAGES

155.    Plaintiffs, on behalf of themselves and the FLSA Collective, hereby repeat and reallege the foregoing allegations as if set forth fully herein.

156.    Plaintiffs and the FLSA Collective are employees under FLSA § 203(e).

157.    Defendants are employers under FLSA § 203(d).

158.    Pursuant to 29 C.F.R. § 778.106, "overtime compensation earned in a particular workweek must be paid on the regular payday for the period in which such workweek ends."

159.    Defendants engaged in a pattern and practice of failing to pay Plaintiffs and the FLSA collective all overtime wages owed on the regular payday for the period in which the work was performed.

160.    Instead, Defendants had a uniform policy and practice of paying overtime wages two pay periods – four to six weeks – after the work was performed.

161.    Defendants knew or should have known of their obligation to pay Plaintiffs and the FLSA Collective on the regularly scheduled payday for the period in which the work was performed.

162.    Defendants acted willfully and deliberately in maintaining an intentional practice of failing to compensate Plaintiffs in accordance with the FLSA.

163.    Defendants' violations of the FLSA have significantly damaged Plaintiffs and the FLSA Collective and entitle them to recover the total amount of their unpaid wages, with interest, an additional equal amount in liquidated damages, and attorneys' fees and costs.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and the FLSA Collective, respectfully request that this Court:

A.    Declare that the practices complained of herein are unlawful under applicable federal law;

B.    Declare this action to be maintainable as a collective action pursuant to 29 U.S.C. § 216, and direct Defendants to provide Plaintiffs with a list of all members of the FLSA Collective, including all last known addresses, telephone numbers, and e-mail addresses of each

such person, so Plaintiffs can give such persons notice of this action and an opportunity to make an informed decision about whether to participate in it;

C.      Determine the damages sustained by Plaintiffs and the FLSA Collective as a result of Defendants' violations of the FLSA, and award those damages against Defendants and in favor of Plaintiffs and the FLSA Collective, plus such pre-judgment and post-judgment interest as may be allowed by law;

D.      Award Plaintiffs and the FLSA Collective an additional equal amount as liquidated damages because Defendants' violations were willful and/or without a good faith basis;

E.      Award Plaintiffs and the FLSA Collective their reasonable attorneys' fees and costs and disbursements in this action including, but not limited to, any accountants' or experts' fees; and

F.      Grant Plaintiffs and the FLSA Collective such other and further relief that the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs, on behalf of themselves and all other similarly situated Officers, hereby demand a trial by jury on all issues of fact and damages.

Dated: August 17, 2020

**FARUQI & FARUQI, LLP**

By: _____*/s/ Innessa M. Huot*_____
        Innessa Melamed Huot (IH-1916)
        Alex J. Hartzband (AH-0934)

685 Third Avenue, 26th Floor
New York, New York 10017
Telephone: 212-983-9330
Facsimile: 212-983-9331
Email: ihuot@faruqilaw.com
            ahartzband@faruqilaw.com

**TILTON BELDNER, LLP**
Joshua Beldner
Eric S. Tilton
626 RXR Plaza
Uniondale, NY 11556
Telephone: (516) 262-3602
Facsimile: (516) 324-2170
Email: jbeldner@tiltonbeldner.com
          etilton@tiltonbeldner.com

*Attorneys for Plaintiffs and the Proposed*
*FLSA Collective*

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

JEFFREY MERCADO, TYRONE PRINGLE, ADAM ROMAN, KEVIN KNOIS, and EDWARD KALANZ, on behalf of themselves and others similarly situated,

Civil Case No.: 1:20-cv-06533

**CONSENT TO SUE**

Plaintiffs,

v.

METROPOLITAN TRANSPORTATION AUTHORITY and TRIBOROUGH BRIDGE AND TUNNEL AUTHORITY,

Defendants.

I, ___Jeffrey Mercado___, was employed by Defendants in the last three years and I am a named Plaintiff in the above-captioned action *Mercado, et al. v. Metropolitan Transportation Authority, et al.*, pending in the United States Court for the Southern District of New York. I hereby consent to sue Defendants and be a party Plaintiff in this lawsuit.

I hereby appoint the law firms of Faruqi & Faruqi, LLP, located at 685 Third Ave., 26th Fl., New York, NY 10017, telephone number (212) 983-9330 – as well as Tilton Beldner, LLP, located at 626 RXR Plaza, Uniondale, NY 11556, telephone number (516) 262-3602, at my attorneys.

Name (Print):  ___Jeffrey Mercado___

Signature:  ___[DocuSigned by: signature] 061E48EA6E5B42F...___

Date:  ___8/16/2020 | 6:28 PM PDT___

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

JEFFREY MERCADO, TYRONE PRINGLE, ADAM ROMAN, KEVIN KNOIS, and EDWARD KALANZ, on behalf of themselves and others similarly situated,

Plaintiffs,

v.

METROPOLITAN TRANSPORTATION AUTHORITY and TRIBOROUGH BRIDGE AND TUNNEL AUTHORITY,

Defendants.

Civil Case No.: 1:20-cv-06533

**CONSENT TO SUE**

I, _Tyrone Pringle_____, was employed by Defendants in the last three years and I am a named Plaintiff in the above-captioned action *Mercado, et al. v. Metropolitan Transportation Authority, et al.*, pending in the United States Court for the Southern District of New York. I hereby consent to sue Defendants and be a party Plaintiff in this lawsuit.

I hereby appoint the law firms of Faruqi & Faruqi, LLP, located at 685 Third Ave., 26th Fl., New York, NY 10017, telephone number (212) 983-9330 – as well as Tilton Beldner, LLP, located at 626 RXR Plaza, Uniondale, NY 11556, telephone number (516) 262-3602, at my attorneys.

Name (Print): ____Tyrone Pringle_____

Signature: DocuSigned by:

_____88562C3D03354E3...____

Date: _8/16/2020 | 11:15 PM EDT____

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JEFFREY MERCADO, TYRONE PRINGLE, ADAM ROMAN, KEVIN KNOIS, and EDWARD KALANZ, on behalf of themselves and others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>METROPOLITAN TRANSPORTATION AUTHORITY and TRIBOROUGH BRIDGE AND TUNNEL AUTHORITY,<br><br>Defendants. | Civil Case No.:1:20-cv-06533<br><br>**CONSENT TO SUE** |

I, _____Adam Roman_____, was employed by Defendants in the last three years and I am a named Plaintiff in the above-captioned action *Mercado, et al. v. Metropolitan Transportation Authority, et al.*, pending in the United States Court for the Southern District of New York.  I hereby consent to sue Defendants and be a party Plaintiff in this lawsuit.

I hereby appoint the law firms of Faruqi & Faruqi, LLP, located at 685 Third Ave., 26th Fl., New York, NY 10017, telephone number (212) 983-9330 – as well as Tilton Beldner, LLP, located at 626 RXR Plaza, Uniondale, NY 11556, telephone number (516) 262-3602, at my attorneys.

Name (Print): _____Adam Roman_____

Signature: _____

Date: __8/16/2020 | 7:30 PM EDT__

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

JEFFREY MERCADO, TYRONE PRINGLE, ADAM ROMAN, KEVIN KNOIS, and EDWARD KALANZ, on behalf of themselves and others similarly situated,

Plaintiffs,

v.

METROPOLITAN TRANSPORTATION AUTHORITY and TRIBOROUGH BRIDGE AND TUNNEL AUTHORITY,

Defendants.

Civil Case No.: 1:20-cv-06533

**CONSENT TO SUE**

I, _Kevin Knois_____, was employed by Defendants in the last three years and I am a named Plaintiff in the above-captioned action *Mercado, et al. v. Metropolitan Transportation Authority, et al.*, pending in the United States Court for the Southern District of New York.  I hereby consent to sue Defendants and be a party Plaintiff in this lawsuit.

I hereby appoint the law firms of Faruqi & Faruqi, LLP, located at 685 Third Ave., 26th Fl., New York, NY 10017, telephone number (212) 983-9330 – as well as Tilton Beldner, LLP, located at 626 RXR Plaza, Uniondale, NY 11556, telephone number (516) 262-3602, at my attorneys.

Name (Print): _Kevin Knois_____

Signature: _DocuSigned by:_ _CD56339D6B8E4F3..._

Date: _8/16/2020 | 9:09 PM EDT_

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

JEFFREY MERCADO, TYRONE PRINGLE, ADAM ROMAN, KEVIN KNOIS, and EDWARD KALANZ, on behalf of themselves and others similarly situated,

Plaintiffs,

v.

METROPOLITAN TRANSPORTATION AUTHORITY and TRIBOROUGH BRIDGE AND TUNNEL AUTHORITY,

Defendants.

Civil Case No.: 1:20-cv-06533

**CONSENT TO SUE**

I, __Edward Kalanz_____, was employed by Defendants in the last three years and I am a named Plaintiff in the above-captioned action *Mercado, et al. v. Metropolitan Transportation Authority, et al.*, pending in the United States Court for the Southern District of New York.  I hereby consent to sue Defendants and be a party Plaintiff in this lawsuit.

I hereby appoint the law firms of Faruqi & Faruqi, LLP, located at 685 Third Ave., 26th Fl., New York, NY 10017, telephone number (212) 983-9330 – as well as Tilton Beldner, LLP, located at 626 RXR Plaza, Uniondale, NY 11556, telephone number (516) 262-3602, at my attorneys.

Name (Print):   __Edward Kalanz_____

Signature:   __*Edward Kalanz*_____
DocuSigned by:
D055E13C7AE246E...

Date:   __8/16/2020 | 5:51 PM EDT__