

NEW YORK CALIFORNIA GEORGIA PENNSYLVANIA

**Innessa M. Huot**
ihuot@faruqilaw.com

June 6, 2023

**VIA ECF**

Hon. Judge Analisa Torres
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

**Re:** *Mercado, et al. v. Metropolitan Transportation Authority, et al.*, No. 1:20-cv-6533

Dear Judge Torres:

We represent Plaintiffs in the above-referenced matter and write pursuant to *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015), to respectfully request approval of the parties' settlement of this matter (the "Settlement"), as set forth in the parties' Settlement Agreement and Release, as well as Plaintiffs' counsel's reasonable attorneys' fees and costs. *See* Declaration of Innessa M. Huot ("Huot Decl."),[1] Exhibit A (the "Agreement").[2] If approved, the Settlement will fully and finally resolve Plaintiffs' claims in this matter.

As detailed below, the Settlement is reasonable under each of the five *Wolinsky* factors (*see Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335-36 (S.D.N.Y. 2012)) and complies with the *Cheeks* admonitions. *See Cheeks*, 796 F.3d at 206.

## I. PROCEDURAL HISTORY

Named Plaintiffs Jeffrey Mercado ("Mercado"), Tyrone Pringle, Adam Roman, Kevin Knois, and Edward Kalanz ("Named Plaintiffs") and the additional 456 opt-in Plaintiffs who joined this lawsuit (together, "Plaintiffs") worked as Bridge and Tunnel Officers for Defendant Triborough Bridge and Tunnel Authority ("TBTA"), and, Plaintiffs allege, for Defendant Metropolitan Transportation Authority ("MTA") (together, "Defendants").[3] On August 17, 2020, Named Plaintiffs filed a Collective Action Complaint on behalf of themselves and others similarly situated, alleging that Defendants violated the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* ("FLSA") by, *inter alia*, failing to properly and timely pay overtime wages. *See* ECF No. 1 ("Complaint").

[1] Hereinafter, all references to Declarations of Innessa M. Huot and Joshua Beldner in Support of Settlement Approval and Award of Attorneys' Fees and Expenses shall be referred to as "Huot Decl." and "Beldner Decl.", respectively.
[2] Unless otherwise noted, all exhibits to the Huot Decl. are hereinafter cited as "Ex. __." Further, hereinafter, all capitalized terms shall be defined as in § I of the Settlement Agreement.
[3] Defendants dispute that MTA was Plaintiffs' employer under the FLSA.



Specifically, Named Plaintiffs claim that Defendants failed to pay Plaintiffs for pre-shift and post-shift off-the-clock work (*id.* ¶¶ 39-49), implemented a time keeping system that cuts recorded hours worked (*id.* ¶¶ 58-82), failed to properly calculate overtime (*id.* ¶¶ 83-100), and failed to timely pay overtime (*id.* ¶¶ 101-11). Thereafter, 445 opt-in Plaintiffs joined the case. *See* ECF Nos. 7, 11-13, 19-20, 23, 25-30, 34, 37, 41-45, 47-50, 52-54, 60, 64-67, 70, 73, 76, 84, 86, 90. On June 24, 2021, the Court conditionally certified the FLSA Collective and, over the next four months, an additional 11 opt-in Plaintiffs joined this lawsuit (461 Plaintiffs in total). *See* ECF Nos. 101-03, 107-08, 112. On July 15, 2021 and July 16, 2021, MTA and TBTA each filed an Answer and an Amended Answer, respectively, denying all liability for Plaintiffs' claims. *See* ECF Nos. 97-100.

In furtherance of the parties' efforts to reach a fair and reasonable settlement of this matter, counsel engaged in an extensive investigation and voluminous discovery, including the exchange of interrogatory responses, responses to requests for document production, and the production of records, including personnel files, correspondence, certifications, training materials, payroll documents, paystubs, wage distribution records, time records, and schedules. *See* Huot Decl. ¶ 10. The parties conferred numerous times as to the strengths, weaknesses, and merits of each party's claims and defenses and exchanged case law supporting their respective positions. *Id.* ¶ 16. Plaintiffs' counsel interviewed ***every single Plaintiff*** and analyzed ***over 111,000 records*** and electronically stored information ("ESI") pertaining to each of the Plaintiffs. *Id.* ¶¶ 13-14.

Plaintiffs retained the services of experts with extensive experience evaluating these precise issues in the seminal case *Scott v. City of New York*, 592 F. Supp. 2d 475 (S.D.N.Y. 2008), where police officers successfully litigated nearly identical issues. *Id.* ¶ 19. These experts assisted counsel in the assessment of various methodologies (including those proposed by Defendants) for calculating damages under different scenarios in this case. *Id.* ¶ 20. Based on counsel's detailed interviews, investigations, discovery, analysis of records, and assistance of experts, counsel calculated Plaintiffs' damages to be $14,898,935.34. *Id.* ¶¶ 8-21.

Thereafter, the parties engaged in extensive settlement discussions, exchanging numerous settlement proposals, damage calculations, case law analysis, and additional records. *Id.* ¶ 22. On January 19, 2022, the parties attended a full-day mediation session with highly regarded JAMS mediator, Carol Wittenberg, but were unable to resolve the case at that time. *Id.* ¶ 23. Over the next five months, the parties continued to actively negotiate through Ms. Wittenberg, exchanging additional settlement demands and offers, and engaging in numerous additional settlement discussion sessions with Ms. Wittenberg. *Id.* ¶ 24.

After months of negotiations, on July 27, 2022, the parties were able to resolve Plaintiffs' claims for a total sum of $7,250,000 on the terms set forth in the Agreement now before the Court. *Id.* ¶ 25; *see also id*. at Ex. A.

## II. THE SETTLEMENT IS FAIR, REASONABLE, AND CONSISTENT WITH *CHEEKS*

Plaintiffs submit that this Settlement is especially fair and reasonable as it provides for a remarkable ***100% recovery*** on all vigorously disputed and fact-intensive claims for unpaid wages plus an ***additional 20% recovery*** of liquidated damages for the late payment claims—even assuming all factual and legal assumptions are made in Plaintiffs' favor.[4] Huot Decl. ¶ 27. Indeed, this assumes that Plaintiffs prevail on all their claims and Defendants lose on all their defenses. *Id*. ¶ 28.

To assess the reasonableness of the Settlement, the Court must consider the totality of the circumstances including, but not limited to, examining the five so-called *Wolinsky* factors: (1) Plaintiffs' range of possible recovery; (2) the extent to which the Settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the Settlement is the product of arm's-length negotiations between experienced counsel; and (5) the possibility of fraud or collusion. *Wolinsky*, 900 F. Supp. 2d at 335-36. Additionally, courts scrutinize the "admonitions" set forth in *Cheeks*—specifically, that overbroad releases and stringent confidentiality provisions are to be avoided. *See Flood v. Carlson Rests. Inc.*, No. 14 Civ. 2740, 2015 WL 4111668, at *2 (S.D.N.Y. July 6, 2015). This Settlement satisfies the five *Wolinsky* factors and does not conflict with the *Cheeks* admonitions.

### A. Plaintiffs Will Receive a Significant Portion of Their Maximum Possible Recovery Under the Settlement

The first *Wolinsky* factor supports a finding that the Settlement is exceedingly fair and reasonable as it provides Plaintiffs with a substantial portion of the maximum possible recovery that they would obtain if they litigated this matter through summary judgment and/or trial. Indeed, where all facts are viewed in light most favorable to Plaintiffs, the Settlement results in Plaintiffs recovering 100% of all unpaid wages plus an additional 20% of the liquidated damages for the late payment claims. Huot Decl. ¶¶ 27-28.[5]

This recovery reflects a reasonable compromise and exceeds recovery percentages recently approved in other wage-and-hour settlements within this District. *See Raniere v. Citigroup Inc.*, 310 F.R.D. 211, 219 (S.D.N.Y. 2015) ("[A] recovery figure of 22.8% seems within the bounds of reasonableness."); *Siddiky v Union Sq. Hosp. Group, LLC*, 15 CIV. 9705 (JCF), 2017 WL

---

[4] Defendants advised that they assessed the Settlement as a 49% cumulative recovery of unpaid wages and liquidated damages calculated together, based on Plaintiffs' assumptions and calculations, which is eminently fair and reasonable in light of the vigorously disputed facts and legal claims in this case. Huot Decl. ¶ 29.

[5] As noted, *supra*, Defendants advised that they assessed the Settlement as 49% of the total recovery based on Plaintiffs' assumptions and calculations, rather than separately valuing the percentage of recovery of economic verses liquidated damages. *Id.*



2198158, at *6 (S.D.N.Y. May 17, 2017) (approving 23% recovery of plaintiffs' maximum possible recovery); *Griffin v. Aldi, Inc.*, No. 5:16-cv-00354, ECF No. 109 (N.D.N.Y. Nov. 15, 2018) (approval of settlement of 28% of maximum damages); *Trinidad v. Pret a Manger (USA) Ltd.*, No. 12 Civ. 6094, 2014 WL 4670870, at *7 (S.D.N.Y. Sept. 19, 2014) (approving FLSA class settlement of 20-25% of maximum recovery).

To ascertain Plaintiffs' best-case scenario for recovery, Plaintiffs' counsel analyzed and evaluated the merits of the various claims at issue. Huot Decl. ¶¶ 13-18. Plaintiffs' counsel conducted extensive interviews with every single one of the 461 Plaintiffs and analyzed over 111,000 records and ESI provided by both Plaintiffs and Defendants in this case. *Id.* ¶ 30. For example, Plaintiffs analyzed detailed time records for each of the 461 Plaintiffs for every single shift they worked during the relevant time period in order to calculate hours worked, hours cut, and overtime hours claimed. *Id*. ¶ 31; Ex. B (excerpt of Time Records for Plaintiff Jeffrey Mercado for 2017). Plaintiffs also analyzed detailed payroll records for each of the Plaintiffs for the work they performed during each pay period and extracted data relating to hours paid, differentials paid, attendance bonuses, Lump Sum Payments,[6] and overtime paid. Huot Decl. ¶ 33; Ex. C (excerpt of Payroll Records for Plaintiff Jeffrey Mercado for 2017).[7] With this data, Plaintiffs recalculated the FLSA-complaint regular and overtime rates of pay – as well as the precise amount of unpaid overtime hours and late paid overtime hours claimed by each Plaintiff for each pay period. Huot Decl. ¶ 36; Ex. D (detailed damage model for all Plaintiffs, showing damages per pay period for each claim). Based on this analysis and investigation, as well as formal discovery, and assistance of experts, Plaintiffs' counsel assessed the strengths and weaknesses of each of Plaintiffs' claims and calculated the range of possible recoveries. *Id.* ¶¶ 38.

Here, Plaintiffs allege that they perform compensable pre-shift and post-shift work (*i.e.*, reviewing roll call assignment sheets, compiling forms, signing out necessary equipment, briefing, submitting patrol reports, etc.), but Defendants' time keeping system automatically rounds their clock-in and clock-out times to their scheduled tour start and end times; thereby cutting all hours worked outside their scheduled tours. *Id.* ¶ 39; Complaint ¶¶ 39-49, 58-82; *see also* Ex B (time records showing clock-in and clock-out times). Defendants claim that they provide "check-in/check-out pay" as additional compensation intended to cover pre-shift briefing time and post-shift work, and dispute that Plaintiffs perform other compensable work outside their scheduled tour times. *See* Ex. C (payroll showing check-in/check-out pay). Defendants further contend that this check-in/check-out pay should be used to offset Plaintiffs' claimed overtime. Huot Decl. ¶ 40.

---

[6] Lump Sum Payments specifically at issue in this case included: (1) Longevity Pay; (2) Check-In/Check-out Pay; and (3) Law Enforcement Differentials. Huot Decl. ¶ 44.
[7] Exhibits B and C are excerpts of Time Records and Payroll Records produced by Defendants. The complete records are over 75,000 pages and would not be feasible to attach as exhibits to this filing. However, the complete records can be made available for the Court's review at Your Honor's convenience. Huot Decl. ¶ 35.

Plaintiffs claim that their pre-shift and post-shift work are indeed compensable and dispute Defendants' characterization of check-in/check-out pay or its use as an offset against claimed overtime. *Id.* ¶ 41. Plaintiffs contend that this check-in/check-out pay is merely a fixed lump sum payment promised under their Collective Bargaining Agreement ("CBA"), similar to a Longevity payment or a Law Enforcement differential, that is paid without regard to the number of hours worked. *Id.* Plaintiffs further claim that this check-in/check-out pay amount should not be used as an offset but should instead be included in the regular rate of pay for purposes of calculating overtime. *Id.*

Plaintiffs also allege that Defendants failed to properly calculate their overtime rates because, in addition to check-in/check-out pay, they failed to include additional compensation in their regular rates of pay for purposes of calculating overtime. *Id.* ¶ 42; Complaint ¶¶ 83-100. Specifically, Plaintiffs claim that Defendants paid them depressed overtime rates because they did not include: (1) Differentials; (2) Attendance Bonuses; and (3) Lump Sum Payments promised under their CBA and paid without regard to hours worked. *Id.* ¶ 43; Complaint ¶¶ 83-100.

Additionally, Plaintiffs also allege that, up until July 1, 2020, Defendants' payment of overtime two pay periods (i.e., four to six weeks) after the work was performed was unnecessarily and unreasonably late in violation of the prompt pay requirements of the FLSA. Complaint ¶¶ 101-11; Huot Decl. ¶ 45. Defendants contend that the timing of the overtime payments do not violate the FLSA because they were made as soon as administratively feasible and reasonably practical under the circumstances. *Id.* at ¶ 46.

Overall, Defendants contest the validity of Plaintiffs' contentions, including the number of hours Plaintiffs spent performing compensable pre-shift and post-shift work, their claimed damages, and the assumptions underlying such claims and calculations. Huot Decl. ¶ 47. Specifically, Defendants claim that Plaintiffs improperly include certain payments in the proposed overtime rates, and that the contractual overtime rates paid to Plaintiffs are greater than what is required under the FLSA; thereby rendering damages non-existent. *Id.* Defendants also claim that Plaintiffs are not entitled to overtime because they purportedly have supervisory and/or administrative responsibilities and/or were "highly compensated" and are allegedly exempt under the FLSA. *Id.* Finally, Defendants raise numerous "good faith" defenses, claiming that any damages should extend back only two, rather than three years under the FLSA. *Id.*

The parties vehemently dispute these issues, and have exchanged statutes, regulations, case law, and research memoranda regarding the legal and factual issues supporting their respective positions. *Id.* ¶¶ 48-49. The parties engaged in numerous telephonic and virtual conferences to discuss the facts and law underlying their positions. *Id.* The parties agree that these issues involve fact intensive inquiries regarding Plaintiffs' pre-shift and post-shift activities, to determine whether they are deemed compensable. *Id.* ¶ 50. The parties also agree that these issues involve fact intensive assessments of Plaintiffs' duties to determine whether their primary duties were law

enforcement or supervisory in nature.  *Id.*  The parties further agree that these issues likely require credibility determinations that significantly bear on liability and damages.  *Id.*  Given the fact-intensive nature of the issues in dispute, had this matter not resolved, Plaintiffs were ready to proceed with these issues to trial.  *Id.* ¶ 51.

Nevertheless, for settlement purposes only and specifically, for purposes of Plaintiffs' calculations of potential recovery in terms of evaluating the proposed settlement, the parties assumed the main disputed issues to the benefit of the Plaintiffs.  *Id.* at ¶ 52.  The parties assumed that: (1) all recorded work time was compensable; (2) check-in/check-out pay was not an offset against claimed overtime; (3) all Differentials, Attendance Bonuses, and Lump Sum Payments would be included in the overtime rate; (4) Plaintiffs are not exempt under the FLSA; (5) all overtime payments prior to July 1, 2020, were deemed late under the FLSA; and (6) the statute of limitations for all claimed damages would extend back three years.  *Id.*  Indeed, for settlement purposes only, the parties assumed that Plaintiffs would prevail on all their claims and that Defendants would lose on all of their defenses—a very favorable assumption.

Making all such favorable assumptions to Plaintiffs' benefit, Plaintiffs' counsel calculated the maximum possible damages for each of the 461 Plaintiffs, with the assistance of experts, by analyzing each of their paystubs, time records, approval reports, payroll documents, and schedules for every pay period during the relevant time period.  *Id.* at ¶ 53; *see also*, Exs. B-C.  Plaintiffs' counsel recalculated Plaintiffs' regular rate of pay, to include the additional compensation previously described, and then calculated what Plaintiffs claim to be the FLSA-compliant overtime rate.  Huot Decl. at ¶¶ 54-55; *see also* Ex. D (damage model).  Plaintiffs' counsel then calculated unpaid overtime by determining both the number of off-the-clock hours cut by Defendants' timekeeping system and the amount of overtime wages Defendants underpaid due to their depressed overtime rates.  Huot Decl. at ¶ 56; *see also* Ex. D.

The total backpay damages stemming from these claims of unpaid overtime wages amount to $5,397,590.80.  Huot Decl. at ¶ 57; *see also* Ex. D.  Plaintiffs submit that this Settlement provides for a ***100% recovery*** of these damages.  *Id.*  Additionally, the total damages stemming from the late payment of overtime wages claim amounts to $9,501,344.54 – which consists of liquidated damages equal to 100% of all overtime payments made by Defendants, as all of them are alleged to be paid late.  Huot Decl. at ¶ 58; *see also* Ex. D.  Plaintiffs further submit that this Settlement provides for an ***additional 20% recovery*** of these liquidated damages.  *Id.*  As such, making all favorable assumptions, Plaintiffs assert that their damages for all claims amount to $14,898,935.34 ($5,397,590.80 for unpaid wages and $9,501,344.54 for liquidated damages on late payment of wages).  Huot Decl. at ¶ 59; *see also* Ex. D.[8]

---

[8] As noted, *supra,* Defendants advised that they assessed the Settlement as an overall payment of $7,250,000 for damages calculated by Plaintiffs (based on Plaintiffs' assumptions) to be a total of $14,898,935.34, which amounts to an overall recovery of 49% of such cumulative damages, rather than separately valuing economic verses liquidated damages.  Huot Decl. ¶ 29.



Overall, Defendants contend that Plaintiffs' potential recovery is either non-existent or significantly lower than estimated. *Id.* at ¶ 60. Moreover, if Defendants successfully prevail on even one of their defenses—check-in/check-out pay, compensable work, statute of limitations, or any of the other factually intensive issues and defenses discussed above—then Plaintiffs would stand to recover only a fraction of the potential damages provided under this Settlement. *Id.* Given the fact-intensive nature of the claims, and the risk that Defendants might potentially prevail on all, or at least some, of their defenses, Plaintiffs' counsel believes that this Settlement reflects a substantial portion of the maximum possible recovery that Plaintiffs would obtain if they litigated this matter through summary judgment and/or trial and is an overwhelmingly positive result for Plaintiffs. *Id.* ¶ 61.

**B. By Entering Into the Settlement, the Parties Avoid Significant Burden in Establishing Their Claims and the Attendant Risks of Continued Litigation**

The second and third *Wolinsky* factors are met because both parties will avoid the significant expense of continued discovery, motion practice, expert discovery, and the risk of a lengthy, fact-intensive trial. Courts have repeatedly recognized that cases where plaintiffs must prove that they engaged in off-the-clock work are both fact-intensive and challenging, as it is difficult to establish the parties' claims and defenses. *See, e.g.*, *Riedel v. Acqua Ancien Bath N.Y. LLC*, No. 14 Civ. 7238, 2016 WL 3144375, at *7 (S.D.N.Y. May 19, 2016) (recognizing risks of proving damages for off-the-clock claims); *Long v. HSBC USA Inc.*, No. 14 Civ. 6233(HBP), 2015 WL 5444651, at *4 (S.D.N.Y. Sept. 11, 2015) ("[T]he claims and defenses are fact-intensive and present risks, including the potential inability to prove the number of hours worked and amount of unpaid overtime wages[.]"). Here, the burden will be especially great because the parties maintain drastically different assessments of whether and for how many hours Plaintiffs worked before and after their scheduled tours.

Indeed, further litigation would result in additional expense, including formal expert discovery, motion practice, and trial preparation, that could meaningfully decrease possible recovery for Plaintiffs. For example, Defendants would likely move to decertify the FLSA collective, and both parties would move for summary judgment. Put differently, further litigation would result in "additional expense, including costly depositions [], motion practice, trial preparation, trial and appeal, that could meaningfully decrease possible recovery for plaintiffs." *Flores v. Mamma Lombardi's of Holbrook, Inc.*, 104 F. Supp. 3d 290, 299-300 (E.D.N.Y. 2015); *Romero v. La Revise Assocs., L.L.C.*, 58 F. Supp. 3d 411, 420–21 (S.D.N.Y. 2014) (finding in an FLSA action, that "the fact-intensive nature of their claims mean that litigation would likely be lengthy, complex, and expensive"); *Romero v. La Revise Assocs., L.L.C.*, 58 F. Supp. 3d 411, 420-21 (S.D.N.Y. 2014) (finding, in an FLSA action, that "the fact-intensive nature of their claims mean that litigation would likely be lengthy, complex, and expensive").

Given the fact-intensive analysis of the issues in dispute, Plaintiffs submit that this case will likely proceed to trial, at a minimum, on the issues of how many hours Plaintiffs worked before and after their scheduled tours, whether their work was considered compensable, and


whether their primary duties were law enforcement rather than supervisory and/or administrative in nature. Because both parties would face significant expense and risk by continuing to litigate, the parties have saved themselves the costs and risks associated therewith, thus satisfying the second and third factors delineated by *Wolinsky*. Huot Decl. ¶ 62.

### C. <u>The Settlement is the Product of Arm's-Length Bargaining Between Experienced Counsel and There Is No Possibility of Fraud or Collusion</u>

The fourth and fifth factors—whether the Settlement is the product of an arm's-length bargaining process and the possibility of fraud or collusion—also support a conclusion that the Settlement is fair and reasonable. "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement." *Hernandez v. Merrill Lynch & Co., Inc.*, No. 11 Civ. 8472 (KBF) (DCF), 2013 WL 1209563, at *7 (S.D.N.Y. Mar. 21, 2013); *Rangel v. 639 Grand St. Meat & Produce Corp.*, No. 13 Civ. 3234(LB), 2013 WL 5308277, at *1 (E.D.N.Y. Sept. 19, 2013) (approval granted where settlement "was the result of arm's length negotiations, which were undertaken in good faith by counsel") (internal quotation marks omitted). All parties in this matter are represented by counsel experienced in wage-and-hour and employment disputes, and Plaintiffs' counsel has extensive experience representing employees in complex class and collective action litigation. Huot Decl. ¶¶ 4-5; 63; Ex. E (Faruqi & Faruqi, LLP firm résumé); Beldner Decl. ¶¶ 3-5. Parties have worked diligently to advance their clients' positions and negotiate a fair resolution. Huot Decl. ¶ 65.

Further, the Settlement does not contain any of the provisions admonished in *Cheeks*. Following *Cheeks*, courts have looked unfavorably upon FLSA settlement agreements that contain confidentiality agreements and broad releases where workers release claims unrelated to their claims for unpaid wages. *See Jones v. Smith*, 319 F. Supp. 3d 619, 626 (E.D.N.Y. 2018) (court could not approve FLSA settlement "given its confidentiality provision"); *Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 178 (S.D.N.Y. 2015) ("The rationale for rejecting confidential FLSA settlements is particularly strong, since sealing FLSA settlements from public scrutiny could thwart the public's independent interest in assuring that employees' wages are fair.") (internal quotation marks omitted); *Wolinsky*, 900 F. Supp. 2d at 337-41 (court did not approve FLSA settlement with confidentiality agreement); *Alvarez v. Michael Anthony George Const. Corp.*, No. 11 CV 1012(DRH)(AKT), 2015 WL 3646663, at *2 (E.D.N.Y. June 10, 2015) (court did not approve FLSA settlement as the language of the release was "far too sweeping to be fair and reasonable"); *Camacho v. Ess-A-Bagel, Inc.*, No. 14-cv-2592(LAK), 2014 WL 6985633, at *4 (S.D.N.Y. Dec. 11, 2014) (court denied approval based on broad release in FLSA settlement agreement). Critically, this Settlement does not contain any terms that would militate against the Court approving it. For example, the Settlement does not contain any confidentiality provision and allows Plaintiffs to openly and freely discuss their employment experiences, their lawsuit, their claims, and this Settlement with anyone. *See generally* Ex. A.

Likewise, the Settlement contains a release limited to FLSA wage and hour claims, during the time Plaintiffs worked as Bridge and Tunnel Officers ("BTOs") during the Relevant Time

Period. Ex. A § 13. *See Flood v. Carlson Restaurants Inc.*, No. 14 Civ. 2740 (AT) (GWG), 2015 WL 4111668, at *2 (S.D.N.Y. July 6, 2015) (indicating release acceptable if limited to claims relating to existing lawsuit). An identical release was recently approved by another Court in this District in connection with similar FLSA claims brought by other employees against the same Defendants. *See Feliciano v. Metro. Transp. Auth.*, No. 18-CV-26 (VSB), 2020 WL 8991784 (S.D.N.Y. May 6, 2020). This release is specifically tailored and does not fall into the category of releases that are so broad and encompassing as to be rejected because they run afoul of standards of fairness and reasonableness. *See Ezpino v. CDL Underground Specialists, Inc.*, No. 14-CV-3173 (DRH) (SIL), 2017 WL 3037483, at *3 (E.D.N.Y. June 30, 2017).

Pursuant to this Court's Order (ECF No. 128) and its guidance therein, the scope of the release, with respect to the "Released Parties," has been revised and specifically narrowed to include only MTA and TBTA, and their affiliates and subsidiaries, which is appropriately tailored given both MTA and TBTA are named Defendants and the corporate relationship between these Defendants. *See* Ex. A. The inclusion of "affiliates and subsidiaries" is also appropriate because, during the relevant time period, Plaintiffs performed work as BTOs as part of the Fare Evasion Task Force on property belonging to MTA and TBTA's affiliates and subsidiaries, such as New York City Transit Authority and MTA Bus. Huot Decl. ¶ 66. The time spent on such work by Plaintiffs is subject to the FLSA overtime claims at issue in this lawsuit. *Id*. Accordingly, and in light of Plaintiffs' joint-employer claims against MTA and TBTA in this matter, and in furtherance of Plaintiffs releasing their FLSA wage and hour claims for the work they performed as BTOs during the relevant time period, inclusion of subsidiaries and affiliates of Defendants is appropriate.

Further, because under the FLSA individual parties can also be held to be "employers" and can be held "jointly and severally liable for unpaid wages," the release the Parties include with respect to officers, officials, directors, employees, attorneys, and agents of MTA and TBTA (*see* Ex. A) is designed to capture an appropriate measure of implicated parties. *See Araujo v. Macaire*, No. 16 Civ. 9934 (PAE) (KNF), 2020 WL 1816189, at *7 (S.D.N.Y. Apr. 10, 2020) (finding corporate and individual defendants liable). For the avoidance of doubt, the Parties have removed certain parties and added clarification that the Released Parties are only released insofar as they are acting in such official capacities. Ex. A; *see also Lara v. Air Sea Land Shipping & Moving Inc.*, No. 19-CV-8486 (PGG) (BCM), 2019 WL 6117588, at *2 (S.D.N.Y. Nov. 18, 2019) (noting release limitations to parents, subsidiaries and agents "in their capacities" as such).

Similarly, the release includes Plaintiffs' estate, so that in the event one of the Plaintiffs becomes incapacitated or dies, an agent acting on behalf of that Plaintiff's estate cannot bring the same suit against Defendants for the released wage claims. *See* Ex. A. Per this Court's guidance (ECF No. 128), the Parties have otherwise removed other agents of Plaintiffs from the scope of the release. *See* Ex. A. Lastly, per the Court's guidance (ECF No. 128), the Parties have also made the release ***mutual***, such that Defendants' release of Plaintiffs mirrors the release that Plaintiffs are affording Defendants. *See* Ex. A.


### D. <u>The Settlement is Procedurally Appropriate with Respect to the Opt-In Plaintiffs</u>

This Court has conditionally certified this matter as a collective action. ECF No. 93. Named Plaintiffs as well as numerous opt-in Plaintiffs have already submitted declarations and documentary evidence in support of their claims that all Plaintiffs are similarly situated and were similarly denied overtime wages and timely payment of such wages. ECF Nos. 33-02 – 33-10; *see also* Exs. B-D. Plaintiffs now respectfully request that the Court grant final certification of the collective action for settlement purposes. Huot Decl. ¶ 67; *Summa v. Hofstra Univ.*, No. 07-CV-3307 (DRH) (ARL), 2012 WL 13046732, at *2 (E.D.N.Y. Feb. 22, 2012) (final certification of an FLSA collective action was granted when Plaintiffs previously submitted evidence showing claims impacted the other members of the collective); *Diaz v. Scores Holding Co.*, No. 07 Civ. 8718 (THK), 2011 WL 6399468, at *2 (S.D.N.Y. July 11, 2011) ("The standard for approval of an FLSA settlement is lower than for a Rule 23 settlement because an FLSA settlement does not implicate the same due process concerns as does a Rule 23 settlement."). Defendants do not oppose this request. *Id.* ¶ 68.

Each of the additional 456 opt-in Plaintiffs affirmatively executed a consent document that provides <u>***explicit***</u> authorization for the Named Plaintiffs to settle these specific FLSA wage and hour claims on their behalf. ECF Nos. 7; 11-13; 19-20; 23; 25-30; 34; 37; 41; 43-45; 47-50; 52-54; 60; 64-67; 70; 73; 76; 84; 86; 90; 101-03; 107-08; 112 ("I hereby consent [and] agree … to be bound by any judgment of the Court, <u>***or settlement reached by the named Plaintiffs***</u> and Defendants, concerning unpaid wages, liquidated damages, attorneys' fees, costs, and other relief arising out of my employment with the Defendants.") (emphasis added); *see also*, *Stock v. Xerox Corp.*, 516 F. Supp. 3d 308, 313 (W.D.N.Y. 2021) (procedural mechanism is sufficient when opt-in plaintiffs signed a document authorizing the named Plaintiffs "to make decision on their behalves, including with respect to any settlement of the lawsuit."); *Hood v. Uber Techs., Inc.*, No. 16-CV-998, 2019 WL 93546, at *3 (M.D.N.C. Jan. 3, 2019) (settlements on behalf of opt-in plaintiffs are acceptable when the opt-in plaintiffs provide "explicit authorizations" for the named plaintiffs to settle the case on their behalf).

Additionally, Plaintiffs' counsel has communicated the details of the Settlement to each of the opt-in Plaintiffs and they are eagerly, and excitedly, awaiting the Court-approved Notice of Settlement with their Settlement Payments. Huot Decl. ¶ 70; *see also*, *Marichal v. Attending Home Care Servs., LLC*, 432 F. Supp. 3d 271, 280 (E.D.N.Y. 2020) (counsel advising opt-ins of the details of the settlement is one way to avoid the procedural deficiencies of a settlement on behalf of absent class members). Indeed, this Court cited to the *Marichal* case and requested clarification about the structure of the settlement with respect to the opt-ins. ECF No. 128. In *Marichal*, the court declined to approve a settlement that improperly treated opt-in plaintiffs as class members whereby they were given an opportunity to "opt-out of the settlement" and if they failed to do so, they would be "'bound by the settlement" and release their claims. *Marichal*, 432 F. Supp. at 276. This defect is not present in the instant Settlement.

It should be emphasized that there are ***no*** absent class members that are potentially "unknowingly" releasing any claims. On the contrary, ***every single*** Plaintiff will receive the detailed proposed Notice of Settlement (attached as Exhibit A to the Settlement Agreement) and will have an individual choice about whether to accept the Settlement, redeem their Settlement Checks, and release their claims or alternatively, not accept the Settlement, not be bound by the Settlement terms, and retain their right to pursue their claims separately. *See* Ex. A at § 13. Aside from the requested issuance of the proposed settlement notice, all Plaintiffs have already been informed about the details of the settlement and have previously explicitly authorized the Named Plaintiffs to settle these precise claims on their behalf. Huot Decl. ¶¶ 69-70.

For further emphasis, this same mechanism was approved by Judge Broderick in the settlement of a similar ***conditionally*** certified FLSA Collective action in Southern District of New York. *Feliciano*, 2020 WL 8991784, at *3. In *Feliciano*, Plaintiffs' counsel represented a conditionally certified FLSA collective against the same Defendants at issue here, raising very similar FLSA claims. *Id.* The language of the consent document executed by all opt-ins in *Feliciano* was exactly the same as that in the instant case – also authorizing the named plaintiffs to settle the claims on their behalf. *Feliciano,* No. 18-cv-00026, at ECF No. 49-1 (S.D.N.Y. Jan. 2, 2018). The five named plaintiffs moved for settlement approval on behalf of 164 opt-in plaintiffs. Judge Broderick approved the settlement in its entirety, including attorneys' fees, service awards, costs, and expenses. *Feliciano*, 2020 WL 8991784, at *3. The Court authorized the issuance of an almost identical Notice of Settlement as what is proposed in this case to provide each individual opt-in plaintiff with detailed information about the Settlement as they make an individual choice about whether to accept the settlement or not. *Feliciano,* No. 18-cv-00026, at ECF No. 97-2 (S.D.N.Y. Jan. 2, 2018).

The parties in *Feliciano* never moved for final certification of the FLSA Collective, yet that fact had no impact at all on the Court's approval of the settlement. *Feliciano*, 2020 WL 8991784, at *3. Here, Plaintiffs respectfully request final certification of the FLSA collective, out of an abundance of caution, in the event that the Court requires same as a prerequisite for approval of the Settlement.

In sum, this Settlement provides for a significant portion of Plaintiffs' possible recovery, mitigates significant risks and costs of litigation, is the product of arm's-length bargaining amongst experienced counsel, does not contain a confidentiality provision, non-disparagement clause, or overbroad release, is exceedingly fair and reasonable, is procedurally appropriate, and represents a fair compromise of bona fide disputes. As such, the Court should approve this Settlement.


## III. PLAINTIFFS' PROPOSED ATTORNEYS' FEES AND COSTS ARE FAIR AND REASONABLE

Plaintiffs request that the Court approve Plaintiffs' counsel's fees of $2,416,666.67, which is one-third (33.33%) of the Gross Settlement Fund. Huot Decl. ¶ 71; *see Navarrete v. Milano Mkt. Place, Inc.*, No. 18-CV-7858 (OTW), 2019 WL 4303347, at *2 (S.D.N.Y. Sept. 11, 2019) (the attorneys' fee award of "one-third of the settlement sum is reasonable and consistent with fees upheld by courts in this District"). The requested fee represents a modest multiplier of 1.59 of Plaintiffs' counsel's lodestar of $1,527,635 in this case[9] and is exceedingly fair and reasonable under all applicable laws. Huot Decl. ¶ 72.

This Court has previously held that Plaintiffs' requested attorneys' fees are "reasonable under the circumstances." ECF No. 128 at 7 ("the Court accepts the multiplier of 1.59, and determines attorney's fees to be reasonable under the circumstances, particularly given that it amounts to a third of the total settlement award.").

The requested fee is indeed consistent with the one-third contingency fees frequently approved as part of FLSA settlements in this Circuit and in this District. *See, e.g., Flores v. Anjost Corp.*, No. 11 Civ. 1531(AT), 2014 WL 321831, at *8 (S.D.N.Y. Jan. 29, 2014) (finding one-third award "consistent with the norms" of the Second Circuit and collecting cases where one-third was awarded in FLSA cases); *Singh v. MBD Constr. Mgmt., Inc.*, No. 16 Civ. 5216(HBP), 2018 WL 2332071, at *2 (S.D.N.Y. May 23, 2018) (noting that one-third of settlement is "normal rate"); *Gilliam v. Addicts Rehab. Ctr. Fund*, 05 Civ. 3452(RLE), 2008 WL 782596, at *5 (S.D.N.Y. Mar. 24, 2008) (same); *Ezpino*, 2017 WL 3037483, at *3 ("[a] one-third contingency fee is a commonly accepted fee in this Circuit.") (quoting *Calle v. Elite Specialty Coatings Plus, Inc.*, No. 13-CV-6126 (NGG)(VMS), 2014 WL 6621081, at *3 (E.D.N.Y. Nov. 21, 2014)); *Behzadi v. Int'l Creative Mgmt. Partners, LLC*, No. 14-cv-4382 (LGS), 2015 WL 4210906 (S.D.N.Y. July 9, 2015) (awarding one-third to plaintiffs' counsel).

The requested fees and the 1.59 multiplier are further justified by the circumstances of this action. *See* ECF No. 128 at 6-7. This Court has previously held that "a multiplier near 2 should, in most cases, be sufficient compensation for the risk associated with contingent fees in FLSA cases." E.g., *Cabrera v. Rose Hill Asset Mgmt. Corp.*, No. 20 CIV. 2699 (AT), 2022 WL 3328086, at *3 (S.D.N.Y. July 5, 2022) (Torres, J.) (approving a 1.61 multiplier). Indeed, courts in this District routinely approve fee awards that allow for modest premiums to attorneys who undertake the risks incurred in contingency fee cases. E.g., *Sakiko Fujiwara v. Sushi Yasuda Ltd.*, 58 F. Supp. 3d 424, 439 (S.D.N.Y. 2014) ("The fact that counsel here worked on contingency clearly entitles them to some premium for the risk incurred. 'No one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would

[9] This was the lodestar as of December 2022. Since then, Plaintiffs' counsel has expended additional time on this case conferring extensively with Plaintiffs about the Settlement and responding to questions regarding same, renegotiating the revised release language based on the Court's guidance (ECF No. 128) and conferring with Plaintiffs regarding same, researching additional case law, and preparing this revised letter and supplementary papers. Huot Decl. ¶ 73.

charge a client who in advance had agreed to pay for his services, regardless of success. Nor, particularly in complicated cases producing large recoveries, is it just to make a fee depend solely on the reasonable amount of time expended."") (quoting *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 470 (2d Cir.1974)).

Plaintiffs' counsel was in fact retained on a purely contingency fee basis and, as a result, has advanced all costs and shouldered all the risks in this litigation. Huot Decl. ¶ 74. Such risks have included a possibility that Plaintiffs would recover no damages at all, given the highly fact-intensive nature of their wage claims. *Id.* ¶ 75. As such, the requested lodestar multiplier of 1.59 is imminently reasonable and is also significantly below the norm of what is awarded within the Second Circuit and this District. *See, e.g., Griffin, et al. v. Aldi, Inc*., No. 16-cv-354 (LEX/ATB) ECF No. 109 (N.D.N.Y. Nov. 15, 2018) (noting this same Plaintiffs' counsels' expertise in complex wage and hour litigation, commending Plaintiffs' counsel on the quality of their work, and approving a lodestar multiplier of 1.96); *Sewell v. Bovis Lend Lease, Inc.*, No. 09 Civ. 6548(RLE), 2012 WL 1320124, at *13 (S.D.N.Y. Apr. 16, 2012) ("Courts commonly award lodestar multipliers between two and six."); *Johnson*, 2011 WL 4357376, at *20 (noting that "Courts regularly award lodestar multipliers from two to six times lodestar[]" and collecting cases); *In re Lloyd's Am. Trust Fund Litig.*, No. 96 Civ. 1262 RWS, 2002 WL 31663577, at *27 (S.D.N.Y. Nov. 26, 2002) (a "multiplier of 2.09 is at the lower end of the range of multipliers awarded by courts within the Second Circuit"); *Henry v. Little Mint, Inc.*, No. 12 Civ. 3996 (CM), 2014 WL 2199427, at *16 (S.D.N.Y. May 23, 2014) ("In fact, the [1.9] multiplier is at the lower end of the range routinely granted by courts . . . ."); *Ramirez v. Lovin' Oven Catering Suffolk, Inc.*, No. 11 Civ. 0520 (JLC), 2012 WL 651640, at *4 (S.D.N.Y. Feb. 24, 2012) (granting attorneys' fees equal to 6.8 times lodestar); *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 371 (S.D.N.Y. 2002) ("[T]he modest multiplier of 4.65 is fair and reasonable."); *Rabin v. Concord Assets Grp., Inc.*, No. 89 Civ. 6130 (LBS), 1991 WL 275757, at *l–2 (S.D.N.Y. Dec. 19, 1991) (awarding multiplier of 4.4); *Sakiko Fujiwara v. Sushi Yasuda Ltd.*, 58 F. Supp. 3d 424, 438-39 (S.D.N.Y. 2014) (2.28 multiplier); *Hall v. ProSource Techs., LLC*, No. 14-CV-2502 (SIL), 2016 WL 1555128, at *17 (E.D.N.Y. Apr. 11, 2016) (approving a lodestar multiplier of 2.08); *Spicer v. Pier Sixty LLC*, No. 08 Civ. 10240 (PAE), 2012 WL 4364503, at *4 (S.D.N.Y. Sept. 14, 2012) (approving a lodestar multiplier of 3.36). As such, the requested attorneys' fees are reasonable.

Additionally, the requested fee award will also compensate Plaintiffs' counsel for the considerable time needed to administer the Settlement going forward. *See Flores*, 2014 WL 321831, at *9 ("In wage and hour cases, Class Counsel are often called upon to perform work after the final approval hearing, including answering class member questions, answering questions from the claims administrator, and negotiating and sometimes litigating disagreements with defendants about administering the settlement and distributing the fund."); *Johnson*, 2011 WL 4357376, at *16 (noting that future work covered in settlement award supports fee application). Thus, Plaintiffs' request for approval of attorneys' fees is reasonable.

The reasonableness of the requested fee is further confirmed by applying the lodestar method as a "cross check." *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000);


*Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 436 (2d Cir. 2007); *Flores*, 2014 WL 321831, at *9; *In re Penthouse Exec. Club Comp. Litig.*, No. 10 Civ. 1145(KMW), 2014 WL 185628 at *10 (S.D.N.Y. Jan. 14, 2014); *Pucciarelli v. Lakeview Cars, Inc.*, No. 16-CV-4751 (RRM) (RER), 2017 WL 2778029, at *1 (E.D.N.Y. June 26, 2017). The lodestar is determined by multiplying the hours reasonably expended on the case by a reasonable hourly rate.

As of December 9, 2022, Plaintiffs' counsel has billed 3,207.3 hours on this matter—an adversarial litigation that includes 461 Plaintiffs, where Plaintiffs' counsel: (i) investigated Plaintiffs' claims; (ii) drafted detailed pleadings; (iii) engaged in substantial discovery; (iv) exchanged discovery requests, responses, and letters detailing alleged deficiencies in each party's respective discovery production and responses; (v) met and conferred numerous times to resolve disputes; (vi) analyzed over 111,000 documents, employment records, and ESI for all Plaintiffs; (vii) opposed Defendants' Motion to Consolidate; (viii) fully briefed their Motion for Collective Certification, including obtaining numerous declarations from the Plaintiffs in support of same; (ix) prepared for the depositions of the Named Plaintiffs; (x) interviewed every single one of the 461 Plaintiffs and numerous witnesses; (xi) conferred with experts about damage methodologies and calculations; (xii) meticulously calculated the damages for each cause of action for each of the 461 Plaintiffs; (xiii) participated in numerous Court conferences; (xiv) prepared for numerous 30(b)(6) depositions as well as the depositions of Defendants' fact witnesses; (xv) administered notices of pendency for the FLSA Collective; (xvi) exchanged extensive correspondence between and among the parties; (xvii) constantly kept in touch with all of the 461 Plaintiffs to update them on case developments and respond to inquiries; (xviii) drafted detailed mediation statements and damage models for settlement purposes; (xix) participated in a full-day mediation session with Ms. Wittenberg; (xx) exchanged and reviewed supplemental models and calculations between the parties; (xxi) participated in valuable settlement discussions with defense counsel; and (xxii) successfully negotiated the terms of the Settlement Agreement now presented to the Court for approval—amounting to $1,527,635 in fees if calculated pursuant to the lodestar. *See* Huot Decl. ¶¶ 76-77; Ex. F (Total Lodestar); Ex. G (Faruqi Firms' contemporaneously-kept billing records); Beldner Decl. ¶¶ 11-12; Beldner Decl. at Ex. A (Tilton Beldner's contemporaneously-kept billing records).

The lodestar is calculated based on hourly rates that this Court has deemed reasonable. ECF No. 128 ("The Court finds these rates reasonable"). Indeed, comparable hourly rates have been approved by other courts in the Second Circuit and across the country. Huot Decl. ¶¶ 79-80 *see, e.g., Hall v. J. Caiazzo Plumbing & Heating Corp. et al*, No. 1:21-cv-05416(ENV)(SJB) (E.D.N.Y. Sep 29, 2021) ($550 for Ms. Huot, $500 for Mr. Hartzband, $375 for Mr. Burr and Mr. Crabill, $350 for Ms. Stanley, and $150 to $175 for paralegals); *Porrini v. McRizz, LLC, et al.*, No. 2:19-cv-03979(ARR)(RML), ECF Nos. 53-1 ¶ 61; 55 (E.D.N.Y. Jul. 10, 2019) ($550 for Ms. Huot, $450 for Mr. Hartzband, $375 for Mr. Burr and Mr. Crabill, $350 for Ms. Stanley, and $150 to $175 for paralegals); *Alam v. O&S Gen. Contractors Corp.*, No. 18-CV-2069 (LDH) (JO), ECF Nos. 19-4 at 7; 20 (E.D.N.Y. Aug. 17, 2018) (approving rates of $600 for Ms. Huot, $450 for Mr.



Hartzband, and $310 for paralegal); *Guttentag, et al. v. Ruby Tuesday, Inc.*, No. 12 Civ. 3041 (AT), ECF Nos. 107-8; 109 (S.D.N.Y. Oct. 2, 2014) ($875-$625 for partners, $585-$555 for senior associates, $390-$375 for junior associates, and $315-$245 for paralegals); *Foster, et al. v. L-3 Commc'ns EoTech, Inc., et al.*, No. 15-cv-03519- BCW, ECF Nos. 140-1; 155 (W.D. Mo. July 7, 2017) ($550 for Ms. Huot and $375- $310 for paralegals*); Run Them Sweet, LLC v. CPA Global, LTD, et al.*, No. 1:16-cv-1347, ECF Nos. 108- 4 ¶ 4; 114 (E.D. Va. Oct. 6, 2017) ($550 for Ms. Huot); *see also, Goins v. BB&T Securities, LLC, et al.*, No. 1:20-cv-09891(PGG)(JLC), ECF No. 38; *Zigos v. Mayshad Choice Inc., et al.*, No. 1:20- cv-09203-ALC, ECF Nos. 26 ¶ 55; 28 (S.D.N.Y. May 21, 2021); *Betesh v. Onia, LLC, et al.*, No. 20 Civ. 9770 (AT), ECF Nos. 31-1 ¶ 42; 35 (S.D.N.Y. Oct. 12, 2021); *Vitale, et al. v. Mystique Hookah Lounge, Inc., et al.*, No. 2:20-cv-01091-JMA-AKT, ECF No. 28 ¶ 42 (E.D.N.Y. Mar. 30, 2021); *Molina, et al. v. Huaxcuaxtla Rest. Corp., et al.*, No. 1:20-cv-02481-RWL, ECF Nos. 74-1 ¶ 53; 76 (S.D.N.Y. Feb. 25, 2021); *Sanchez, et al. v. Stonehouse Rest LLC, et al.*, No. CV-18-1397 (ST), ECF Nos. 75 ¶ 67; 77 (E.D.N.Y. Feb. 4, 2021); *Kuznetsov, et al. v. Bravura Glass and Mirror Corp., et al.*, No. 20 CV 726 (LB), ECF Nos. 23 ¶ 51; 25 (E.D.N.Y. Dec. 23, 2020); *Feliciano, et al. v. Metro. Transp. Auth., et al.*, No. 18- CV-26 (VSB), ECF Nos. 97-1 ¶ 60; 99 (S.D.N.Y. May 6, 2020); *Pazdniakou v. CoolTech Mech. Corp.*, et al., No. 1:19-cv-5434 (SJB), ECF Nos. 18 ¶ 49; 21 (E.D.N.Y. Mar. 23, 2020); *Griffin, et al. v. Aldi, Inc.*, No. 5:16-cv-354 (LEK/ATB), ECF Nos. 104-4 ¶ 3; 109 ¶¶ 12-13, 18 (N.D.N.Y. Nov. 15, 2018); *Morrell, et al. v. NYC Green Transp. Grp., LLC, et al.*, No. 1:18-cv-00918-PKC-VMS, ECF No. 129-1 ¶ 31 (E.D.N.Y. May 8, 2019); *Georgiev, et al. v. Shapiro, et al.*, No. 19 CIVIL 122 (JPO), ECF Nos. 41 ¶ 24; 47 (S.D.N.Y. Oct. 2, 2019); *Ackerman v. N.Y. Hosp. Med. Ctr. of Queens*, No. 702965/2013, NYSCEF Nos. 71 ¶ 26; 80 ¶ 7-8 (N.Y. Sup. Queens Cty. June 24, 2020); *Reeves, et al. v. La Pecora Bianca, Inc., et al.*, No. 151153/2018, NYSCEF Nos. 57; 108 (N.Y. Sup. N.Y. Cty. June 11, 2020).

Additionally, courts have previously noted that "[a] reasonable hourly rate is 'the rate a paying client would be willing to pay.'" *HVT, Inc, v. Port Authority of N.Y. and N. J.*, No. 15 Civ. 5867 (MKB) (VMS), 2018 WL 6079932, at *1 (E.D.N.Y. Nov. 21, 2018) (citing *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany*, 522 F.3d 182, 190 (2d Cir. 2008)). A meaningful portion of Plaintiffs' counsels' practice is non-contingency cases where clients pay on an hourly basis at the following hourly rates: $550 for Ms. Huot, $500 for Mr. Hartzband, $400 for Mr. Burr and Mr. Crabill; $350 for Ms. Stanley, and $150 to $175 for paralegals. Huot Decl. ¶¶ 81-89. Working on the instant matter on a contingency basis required Plaintiffs' counsel to expend considerable time and resources that could have been otherwise allocated towards non-contingency, hourly work. Huot Decl. ¶ 89. Nevertheless, Plaintiffs' counsel undertook prosecuting this action without any assurance of payment for their services, litigating this case on a wholly contingent basis in the face of significant risk. *Id.* ¶ 90.

Further, Plaintiffs request the Court approve reimbursement of costs and expenses incurred by Plaintiffs' counsel in furtherance of this matter. Plaintiffs' counsel has incurred $82,402.90 in



actual costs and expenses[10] for, *inter alia*, court filings, service fees, mediation costs, claims administration costs, discovery related expenses, expert fees, settlement administration costs, and postage. Huot Decl. ¶¶ 91-93; *see also* Ex. H. These expenses are reasonable, as well as incidental and necessary to the litigation; therefore, their reimbursement under the Settlement should be approved. *See Miltland Raleigh-Durham v. Myers*, 840 F. Supp. 235, 239 (S.D.N.Y. 1993) ("Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they 'were incidental and necessary to the representation' of those clients.") (quoting *Reichman v. Bonsignore, Brignati & Mazzotta, P.C.*, 818 F.2d 278, 283 (2d Cir. 1987)).

Accordingly, Plaintiffs' request for approval of $2,416,666.67 in attorneys' fees and $82,402.90 in unreimbursed expenses, for a total of $2,499,069.57 as compensation for Plaintiffs' counsel's work and their costs in this matter, is reasonable.

## IV. THE PROPOSED SERVICE AWARDS TO NAMED PLAINTFFS ARE FAIR AND REASONABLE

Plaintiffs request that this Court grant service awards of $12,500 to Mercado and $10,000 to each of the remaining four Named Plaintiffs who took leadership roles in the litigation and contributed to the success of the case as a whole. "Service awards fulfill the important purpose of compensating plaintiffs for the time they spend and the risks they take." *Flores*, 2014 WL 321831, at *10 (citing *Massiah v. MetroPlus Health Plan, Inc.*, No. 11-cv-05669, 2012 WL 5874655, at *8 (E.D.N.Y. Nov. 20, 2012)). In examining the reasonableness of a requested service award, courts consider: (1) the personal risk incurred by the plaintiffs; (2) the time and effort expended by the plaintiffs in assisting the prosecution of the litigation; and (3) the ultimate recovery in vindicating statutory rights. *Roberts v. Texaco, Inc.*, 979 F. Supp. 185, 200 (S.D.N.Y. 1997).

Service awards are especially important in employment cases, where employees have assumed risks of future retaliation and losing future employment opportunities. Indeed, Named Plaintiffs "face[] the risk[s] that new employers would learn that they were class representatives in a lawsuit against their former employer and take adverse action against them. Moreover, each time they change jobs, they will risk retaliation in the hiring process." *Asare v. Change Grp. of N.Y., Inc.*, No. 12 Civ. 3371(CM), 2013 WL 6144764, at *15 (S.D.N.Y. Nov. 18, 2013); *see also Sewell v. Bovis Lend Lease, Inc.*, No. 09 Civ. 6548(RLE), 2012 WL 1320124, at *14 (S.D.N.Y. Apr. 16, 2012) (recognizing that plaintiffs in wage and hour case "fac[e] potential risks of being blacklisted as 'problem' employees").

---

[10] In the Agreement, Plaintiffs' counsel was not yet aware of the actual costs and expenses incurred in furtherance of the litigation and identified $100,000.00 as the ceiling for what potential costs and expenses could be. *See* Ex. A at § 4(b). Plaintiffs' counsel has now calculated its actual costs and expenses to be $82,402.90. Huot Decl. ¶¶ 91-92.



First, Named Plaintiffs were all employed by Defendants when they retained Plaintiffs' counsel to investigate their claims against Defendants. Huot Decl. ¶ 6. By initiating this action, they risked retaliation from Defendants.[11] Moreover, they continue to risk retaliation by their current employers and put their ability to secure future employment at risk as well. *Guippone v. BH S & B Holdings, LLC*, No. 09 Civ. 01029(CM), 2011 WL 5148650, at *7 (S.D.N.Y. Oct. 28, 2011) ("Today, the fact that a plaintiff has filed a federal lawsuit is searchable on the internet and may become known to prospective employers when evaluating the person."); *Parker v. Jekyll & Hyde Entm't Holdings, LLC*, No. 08 Civ. 7670(BSJ)(JCF), 2010 WL 532960, at *1 (S.D.N.Y. Feb. 9, 2010) ("[F]ormer employees put in jeopardy their ability to depend on the employer for references in connection with future employment."). Service awards "provide an incentive to seek enforcement of the law despite these dangers." *Id.*; *Henry*, 2014 WL 2199427, at *10 ("In a wages and hours case, where a low level employee assumes responsibility for prosecuting an action against an employer and takes considerable personal risk in so doing, [service] awards are singularly appropriate.").

Second, Named Plaintiffs contributed a significant amount of time and effort to the case. *See* Huot Decl. at Exs. I-M (Decls. of Jeffrey Mercado, Tyrone Pringle, Adam Roman, Kevin Knois, and Edward Kalanz). By way of example only, Named Plaintiffs provided Plaintiffs' counsel with detailed factual information regarding their job duties, Defendants' policies, and other information and documents relevant to their own claims and the claims of the other Plaintiffs. *See id.* Mercado, in particular, spent considerable time researching wage and hour laws, conferring with other Officers and MTA and TBTA personnel, gathering critical records and other evidence to assist counsel with evaluating the strengths and weaknesses of these claims, and responding to numerous inquiries and requests from other Officers about the case. Mercado Decl. ¶¶ 3-11. Moreover, the Named Plaintiffs each participated in lengthy deposition preparation sessions and were instrumental in obtaining discovery from Plaintiffs and assisting Plaintiffs' counsel in analyzing the compensation records and preparing damage calculations. Exs. I-M; *see Parker*, 2010 WL 532960, at *1 (recognizing efforts of plaintiffs including meeting with counsel, reviewing documents, formulating theory of case, and identifying and locating other class members to expand settlement participants); *Frank v. Eastern Kodak Co.*, 228 F.R.D. 174, 187 (W.D.N.Y. 2005) (recognizing the important role that plaintiffs play as the "primary source of information concerning the claims," including by responding to counsel's questions and reviewing documents). Named Plaintiffs also made inquiries and collected information on behalf of Plaintiffs and then disseminated information about the status of the litigation to keep Plaintiffs apprised on any developments. Exs. I-M. Indeed, Named Plaintiffs were vital to the prosecution of this litigation and in securing this Settlement. *Id.*

---

[11] Named Plaintiffs do not allege that Defendants retaliated against them; but the risk of retaliation is important to weigh in any plaintiff's decision to come forward and commence litigation in a representative capacity.



Third, the Settlement has vindicated the statutory rights of Plaintiffs under the FLSA, which further supports the request for the Service Awards. The requested service awards of $12,500 to Mercado and $10,000 to each of the remaining four Named Plaintiffs, collectively amount to approximately 0.72% of the total recovery (less than 1%), which is far below what other courts have held to be a reasonable percentage. *See Reyes v. Altamarea Grp., LLC*, No. 10-CV-6451 (RLE), 2011 WL 4599822, at *9 (S.D.N.Y. Aug. 16, 2011) (approving awards representing approximately 16.6% of the settlement); *Parker*, 2010 WL 532960, at *2 (finding that service awards totaling 11% of the total recovery are reasonable); *RMED Int'l, Inc. v. Sloan's Supermarkets, Inc.*, No. 94 Civ. 5587(PKL)(RL), 2003 WL 21136726, at *2-3 (S.D.N.Y. May 15, 2003) (2.6% of $975,000).

Analyzing the reasonableness of the proposed service awards in terms of absolute dollars, courts routinely approve service awards equal to or greater than the awards requested here. *See Hernandez*, 2013 WL 1209563, at *10 (approving service payment of $15,000 to the named plaintiffs in FLSA collective action); *Sewell*, 2012 WL 1320124, at *15 (awarding $15,000 service award in FLSA case); *Reyes*, 2011 WL 4599822, at *9 (approving award of $15,000); *Khait v. Whirlpool Corp.*, No. 06-6381 (ALC), 2010 WL 2025106, at *9 (E.D.N.Y. Jan. 20, 2010) (approving award of $15,000); *DeLeon v. Wells Fargo Bank, N.A.*, No. 12 Civ. 4494(RLE), 2015 WL 2255394, at *7 (S.D.N.Y. May 11, 2015) (awarding $15,000 to named plaintiff, "recogniz[ing] the risks that the named-Plaintiff faced by participating in a lawsuit against her former employer and the efforts she made on behalf of the class, including producing documents, continuously speaking with Class Counsel, and actively participating in mediation."); *Willix v. Healthfirst, Inc.*, No. 07 Civ. 1143 (ENV)(RER), 2011 WL 754862, at *8 (E.D.N.Y. Feb. 18, 2011) (awarding service payments ranging from $30,000 to $7,500 in FLSA collective action).

The Court previously requested that Plaintiffs provide authority supporting the appropriateness of service awards in conditionally certified FLSA collective actions. ECF No. 128. Plaintiffs appreciate the opportunity to do so. In *Diaz*, the Southern District approved the settlement of a ***conditionally*** certified FLSA collective and held the standard for approving FLSA collective settlements is low because they do not implicate the same due process concerns as Rule 23 settlements. *Diaz v. Scores Holding Co.*, No. 07 Civ. 8718 (THK), 2011 WL 6399468, at *2 (S.D.N.Y. July 11, 2011). In *Diaz*, the Court held that service awards are just as important in FLSA collective actions, as they are in Rule 23 class actions because they are intended to "compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by plaintiff[s]." *Id.* at *3; *see also Sanz v. Johny Utah 51 LLC*, No. 14-CV-4380 (JMF), 2015 WL 1808935, at *1 (S.D.N.Y. Apr. 20, 2015) (awarding service payments to the named plaintiffs of a ***conditionally*** certified FLSA collective and noting that such awards are particularly important in employment related cases). In *Diaz*, the Court further noted that named plaintiffs in FLSA collective actions are typically former or current employees of the defendants and by "lending their names to the litigation" and "bringing the action in their names," have undertaken


the risk of retaliation and other adverse actions for the benefit of the members of the collective. *Diaz*, 2011 WL 6399468, at *3. In *Diaz*, the Court approved service awards that collectively amount to 6.67% of the settlement fund. *Id.* at 10.

In *Feliciano*, Judge Broderick approved $15,000 service awards to each of the five Named Plaintiffs (totaling $75,000) in a very similar ***conditionally*** certified FLSA collective action settlement amounting to $5,400,000 – amounting to 1.4% of the fund. *See Feliciano v. Metro. Transportation Auth.*, No. 18-CV-26 (VSB), 2020 WL 8991784, at *2 (S.D.N.Y. May 6, 2020). In *Feliciano*, neither plaintiffs nor defendants ever moved for final certification of an FLSA Collective, but the Court found that fact to be of no importance in its decision to approve the settlement. *Id.* The Court noted that the service awards to the named plaintiffs of the conditionally certified FLSA collective are appropriate in light of the vital role they played in assisting counsel in the litigation, as well as the time, effort, and personal risk they undertook for the benefit of the conditionally certified collective. *Id.*

Notwithstanding the appropriateness of awarding service awards to named plaintiffs in conditionally certified FLSA collective actions, Plaintiffs here request final certification of the collective action for settlement purposes. Huot Decl. ¶ 67. Defendants do not oppose this request. Huot Decl. ¶ 68. As detailed *supra* at 10, Plaintiffs have already submitted extensive documentary evidence and sworn declarations showing that Plaintiffs are all similarly situated and were similarly denied overtime wages and timely payment of such wages under the FLSA. ECF Nos. 33-02 – 33-10; Exs. B-D; *see also Summa*, 2012 WL 13046732, at *2 (final certification of an FLSA collective action was granted when Plaintiffs previously submitted evidence showing claims impacted the other members of the collective).[12] As such, final certification of the FLSA collective is warranted.

Here, the requested service awards ***<u>together</u>*** amount to only 0.72% of the total settlement (less than 1%), and as set forth above, are intended to compensate the Named Plaintiffs for the significant time, effort, and personal risk they undertook to lead this litigation and achieve the result obtained on behalf of the members of the FLSA collective. Moreover, the precise details of the service awards and the claims administration costs are explicitly stated in the proposed Notice of Settlement that Plaintiffs respectfully request that the Court approved as part of this Settlement. *See* Exhibit A attached to the Settlement Agreement. This notice provides each Plaintiff with specific information about service awards and reimbursement of claims administration costs as each Plaintiff makes an individual choice about whether to accept the Settlement and release their

---

[12] In *Summa*, the court approved service awards to named plaintiffs in an FLSA collective action amounting to 4% of the claim fund. *Id.* at *4. The Court also approved reimbursement of costs and fees related to the cost of claims administration. *Id.*; *see also Stock.*, 516 F. Supp. 3d 308, 314 (reimbursement of claims administration costs in FLSA collective actions is appropriate); *compare with* ECF No. 128 (this Court inquiring about authority supporting the reimbursement of claims administration costs in FLSA collective action settlements).



claims or alternatively – not accept the Settlement and retain their right to pursue their claims separately. *See* Ex. A at § 13.

Accordingly, the requested service awards are reasonable and appropriate in FLSA collective action settlements and should be approved.

## V. CONCLUSION

Accordingly, Plaintiffs request that the Court approve of the Settlement, order final certification of the FLSA Collective, So Order the Stipulation and [Proposed] Order Approving the Settlement and Dismissing the Case, and have it entered on the docket by the Clerk of the Court.

We thank Your Honor for the Court's time and consideration.

Respectfully submitted,

Innessa M. Huot

Cc: Counsel of Record (*via* ECF)